(December 17, 1912.)

## E. W. CALKINS, Respondent, v. BLACKWELL LUMBER COMPANY, a Corporation, Appellant.

[129 Pac. 435.]

NEGLIGENCE—EVIDENCE—CIRCUMSTANTIAL—WHEN SUFFICIENT—JURY— VERDICT—GENERAL—SPECIAL.

(Syllabus by the court.)

1. Under the provisions of sec. 4397, Rev. Codes, in an action for the recovery of money only, or specific real property, the jury in their discretion may render a general or special verdict, and where a special finding of fact is inconsistent with the general verdict, the special finding controls the general verdict, and judgment must be entered in accordance with the special finding.

2. The evidence in this case examined, and *held,* that while there is a conflict in the evidence, we find that there is sufficient

evidence in the record to support the findings of the jury and the judgment of the court.

3. It is a recognized rule of law in this state that in a civil suit, where negligence is the issue for the jury to determine, it is sufficient if the evidence, whether direct or circumstantial, creates a preponderance of the proof.

4. Circumstantial evidence is legal evidence, and if the facts are shown by circumstantial evidence, and are such that reasonable men may fairly differ upon the question whether there was negligence or not, and the jury concludes that there was negligence, the verdict of the jury should not be set aside or reversed.

5. In an action to recover damages resulting from alleged negligence, if the facts are such that more than one reasonable conclusion or inference can be drawn from the circumstantial facts in evidence—one that negligence has been shown and the other that negligence has not been shown—and if the jury decide and determine that negligence has been shown, the action of the jury should not be disturbed.

6. Other questions immaterial and not prejudicial examined, and *held* not to be grounds for reversal.

APPEAL from the District Court of the Eighth Judicial District for Kootenai County.   Hon. Robert N. Dunn, Judge.

Action to recover damages.   *Affirmed.*

John P. Gray and Chas. L. Heitman, for Appellant.

The special verdict controls the general verdict and the special findings control the judgment. (*Gwin v. Gwin,* 5 Ida. 271, 48 Pac. 295; *Bradbury v. Idaho & Ore. Land Imp Co.,* 2 Ida. 239, 10 Pac. 620; *Menasha Woodenware Co. v. Spokane etc. Ry. Co.,* 19 Ida. 586, 115 Pac. 22.)

The proof of negligence that satisfies the law and upon which men can be charged and held to pay is the proof of negligence which is a cause of a particular injury. In this case the plaintiff did not show that any fire was ever negligently set by the appellant which was responsible for the burning of the lands in question. (*Gibbons v. Wisconsin Valley R. Co.,* 58 Wis. 335, 17 N. W. 132; *Menominee River Sash etc. Co. v. Milwaukee & N. R. Co.,* 91 Wis. 447, 65 N. W. 176.)

In proving a case by circumstantial evidence, it is the duty of the party resting his case thereon to show clearly and convincingly the negligence and the fact that the negligence is the proximate cause, and every link in the chain must be there, just the same as if a man's life depended upon it in a criminal case. (17 Cyc. 817; *Finkelston v. Chicago M. & St. P. Ry. Co.*, 94 Wis. 270, 68 N. W. 1005; *Frazier v. Georgia R. & B. Co.*, 108 Ga. 807, 22 S. E. 996; *Atlantic Coast Line R. Co. v. Watkins*, 104 Va. 154, 51 S. E. 172; *Consumer's Brewing Co. v. Doyle's Admx.*, 102 Va. 399, 46 S. E. 390; *Neal v. Chicago R. I. & P. Ry. Co.*, 129 Iowa, 5, 105 N. W. 197, 2 L. R. A., N. S., 905; *Georgia Southern etc. Ry. Co. v. Thompson*, 111 Ga. 731, 36 S. E. 945; *Asbach v. Chicago etc. Ry. Co.*, 74 Iowa, 248, 37 N. W. 182; *Blid v. Chicago & N. W. Ry. Co.*, 89 Neb. 689, 131 N. W. 1027; *Ruppert v. Brooklyn Heights R. Co.*, 154 N. Y. 90, 47 N. E. 971; *Cleveland etc. R. Co. v. Marsh,* 63 Ohio St. 236, 58 N. E. 821, 52 L. R. A. 142; *Chicago R. I. & P. Ry. Co. v. Rhoades,* 64 Kan. 553, 68 Pac. 58.)

McFarland & McFarland and Franklin Pfirman, for Respondent.

The care, caution and diligence required by the law is always measured by the circumstances of the particular case, and the rule of admeasurement is, the greater the hazard the greater the care required. (1 Thompson on Negligence, sec. 25, and numerous cases cited.)

Every ground of negligence of which appellant was found guilty by the jury was a violation of the statutes (Sess. Laws 1909, p. 227) and a misdemeanor under the act. These acts constituted negligence as a matter of law. (*Wheeler v. Oregon R. & Nav. Co.*, 16 Ida. 375, 102 Pac. 347.)

A fact can be said to be established by circumstantial evidence in a civil action when the facts relied upon are of such a nature and are so related to each other that the conclusion sought to be established can fairly and reasonably be drawn from them. (*Meier v. Northern Pac. Ry. Co.*, 51 Or. 69, 93 Pac. 691, and authorities cited; *Chicago R. I. & P. Ry. Co.*

*v. Wood,* 66 Kan. 613, 72 Pac. 215; *Adams v. Bunker Hill etc. Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844.)

· In civil cases it is sufficient if the evidence agrees with and supports the hypothesis which it is adduced to prove, and it is not necessary that it should exclude other hypotheses in order to enable the plaintiff to recover, but the case should be submitted to the jury, and the jury should decide according to the reasonable probability of the truth. (Greenleaf on Evidence, 12th ed., sec. 13a; *Schoepper v. Hancock Chemical Co.,* 113 Mich. 582, 71 N. W. 1081; *Western Travelers' Acc. Assn. v. Holbrook,* 65 Neb. 469, 91 N. W. 276, 94 N. W. 816; *Barnowsky v. Helson,* 89 Mich. 523, 50 N. W. 989, 15 L. R. A. 33; *Lillstrom v. Northern Pac. R. Co.,* 53 Minn. 464, 55 N. W. 624, 20 L. R. A. 587; *Philadelphia etc. R. R. Co. v. Huber,* 128 Pa. 63, 18 Atl. 334, 5 L. R. A. 439; *Portland Gold Min. Co. v. Flaherty,* 111 Fed. 312, 49 C. C. A. 361, 21 Morr. Min. Rep. 555; *Pruke v. South Park Foundry etc. Co.,* 68 Minn. 305, 71 N. W. 276; *Indianapolis etc. R. Co. v. Collingwood,* 71 Ind. 476; *Miller v. Inman & Co.,* 40 Ore. 161, 66 Pac. 713; *Hashman v. Wyandotte Gas Co.,* 83 Kan. 328, 111 Pac. 468; *Davis v. Connecticut Fire Ins. Co.,* 158 Cal. 766, 112 Pac. 549; *Holmes v. Goldsmith,* 147 U. S. 150, 13 Sup. Ct. 288, 37 L. ed. 118.)

Whenever there is substantial evidence to support a verdict, the same shall not be set aside. (Sec. 4824, Rev. Codes; *Snowy Peak Min. Co. v. Tamarack etc. Min. Co.,* 17 Ida. 630, 107 Pac. 60; *Fodey v. Northern Pac. Ry. Co.,* 21 Ida. 713, 123 Pac. 835.)

STEWART, C. J.—This action was brought by the respondent for the purpose of recovering damages alleged to have been sustained by the respondent and ten other persons, who assigned their claims to respondent. The damages were the result of a fire which consumed timber upon land owned by the respondent and his assignors. In the complaint it is alleged that damages resulted by reason of the negligence of the appellant.

The complaint, after alleging ownership of the lands of respondent and the other parties interested and damaged, and the ownership and control of timber lands by the appellant, alleges:

1st.   That the said defendant, during the period from June 1, 1910, up to the time of plaintiff's grievances herein complained of, and during the closed season of 1910, wilfully, unlawfully, negligently and carelessly failed and neglected to provide its said portable engines, jammers and logging locomotives with good, sufficient or proper spark-arresters, or other sufficient or proper appliances to prevent the escape of fire therefrom.

2d.   That the said defendant negligently and carelessly permitted the spark-arresters in said portable engines, jammers and logging locomotives, and said engines, jammers and locomotives to operate in a defective, inefficient and insufficient manner, and wilfully, unlawfully, negligently and carelessly permitted sparks to escape from said portable engines, jammers and logging locomotives, whereby numerous fires were started along and adjacent to said railroad of defendant.

3d.   That during the said period the defendant wilfully, unlawfully, negligently and carelessly set out, and caused to be set out, fires in slashings and down timber on its said timber lands and its said timber holdings along and near its said railroad, for the purpose of clearing said lands, and the lands on which it owned the said timber, of brush and other inflammable material, without first obtaining permits or any permit in writing or print, or at all, from the fire warden of the fire district then duly established and in which said lands and timber were situated, and without sufficient or any help present to control the same, and without guarding or watching the same.

4th.   That during said period the defendant wilfully, unlawfully, negligently and carelessly failed and neglected to keep the ground for fifty feet on each side of the track of said logging railroad so operated by defendant, or such portion thereof owned or controlled by defendant, free or clear from combustible and inflammable materials, but allowed the

said right of way to be and remain covered with dry grass, sticks, old logs and other inflammable materials and negligently, and carelessly permitted said materials to be set on fire by its said locomotives, jammers and portable engines and to continue on fire and to burn without making sufficient or any efforts to extinguish such fires after the same were started.

5th.   That at numerous times during said period the defendant wilfully, unlawfully, negligently and carelessly suffered and permitted its employees to leave deposits of fire, live coals and ashes along said railroad and on said railroad's right of way and in the immediate vicinity of woodlands adjoining said railroad and right of way, which were liable to be overrun by fire, and whereby numerous fires were communicated to the said woodlands.

6th.   That on or about the 28th of July, the defendant wilfully, unlawfully, negligently and carelessly suffered and permitted said fires to escape from its right of way and its lands and timber and to spread over the plaintiff's premises.

The defendant put in issue the material allegations of the complaint, and alleged affirmatively that the injuries sustained by the appellant "was brought about and caused by the act of God, to wit, by an exceedingly high wind, or winds, of unprecedented violence and velocity, which on or about the 28th day of July, 1910, and for days before and after said date prevailed in, around, and upon and across all of said lands described and set forth in said complaint, and in each and every of said eleven causes of action, which said violent wind, or winds, could not be controlled by the defendant, its servants, and agents, or by any human agency or agencies, and over which defendant and its servants and agents had absolutely no control, and that the injury to or destruction of said property described in said complaint, if injured or destroyed at all, was proximately caused by said unprecedented and violent wind or winds, and that the injury to, or destruction of said property, if injured or destroyed at all, would not have occurred, had there not been such violent and unprecedented wind, or winds, and that the

injury, or destruction complained of, if caused at all, was caused by the act of God, through said unprecedented wind or winds, and not in any manner, or at all, by the alleged negligence of the defendant, its servants or agents.''

A jury was selected to try the case, and evidence was introduced on behalf of plaintiff and defendant, and the cause was submitted to the jury. The jury were directed to return a general verdict, and likewise answer certain interrogatories submitted to them, which will be hereafter referred to. The jury returned a general verdict for the respondent in the sum of $11,516.65, and specifically answered the interrogatories submitted. The following are the special interrogatories and the answers:

"Interrogatory No. 1. Were the donkey-engines of the defendant during the period from June 1st, 1910, up to the time of plaintiff's alleged grievances equipped with good and sufficient spark-arresters?

"A. Yes.

"Interrogatory No. 3. Was any fire kindled by the donkey-engines which extended to the lands of the plaintiff and his assignors?

"A. No.

"Interrogatory No. 5. Were the jammers of the defendant during the period from June 1st, 1910, up to the time of plaintiff's alleged grievances equipped with good and sufficient spark-arresters?

"A. No.

"Interrogatory No. 7. Was any fire kindled by the jammers which extended to the lands of the plaintiff and his assignors?

"A. No.

"Interrogatory No. 9. Did the defendant set out or cause to be set out any fires in slashings or down timber on its timber lands or timber holdings near its railroad for the purpose of clearing said lands, or the lands on which it owned the timber, or brush or other inflammable material at any time subsequent to the 1st day of June, 1910?

"A. Yes.

"Interrogatory No. 10. If so, where, and when?

"A. By the spark alleged to have been set out on camp seven branch.

"Interrogatory No. 11. Did the defendant burn any brush or other inflammable material or set out or cause to be set out any fires in slashings on any of its lands subsequent to the 1st day of June, 1910, and up to the time of plaintiff's alleged grievances, without first obtaining permits in writing or print from the fire warden of the fire district then established in which the lands and timber were situated, or without sufficient or any help present to control the same, or without guarding the same?

"A. Yes.

"Interrogatory No. 12. If so, where and when.

"A. At Camp 5 in July.

"Interrogatory No. 13. Was the fire set at Camp 5 to protect the camp and back-fire, put out by the defendant, without extending to the lands of the plaintiff or any of his assignors?

"A. No.

"Interrogatory No. 15. Did any fire set along the right of way of Camp 5 branch extend to the lines of the plaintiff and his assignors?

"A. Yes.

"Interrogatory No. 16. If you answer the above question 'yes,' how did the fire start, where and when?

"A. By burning slashing at Camp 5 in July.

"Interrogatory No. 17. Was the defendant company guilty of any negligence in failing to put forth efforts to control and put out fires in the vicinity of its operations?

"A. Yes.

"Interrogatory No. 22. Were the lands of the plaintiff burned over by reason of any negligence of the defendant? If so, of what did it consist?

"A. Yes, by not sufficiently extinguishing and guarding against fires mentioned in Nos. 10 and 16.

"Interrogatory No. 23. Did the defendant use reasonable and ordinary care to prevent any fires from reaching the woodlands?

"A. We believe not.

"Interrogatory No. 24. Were the locomotive engines of the defendant during the period from June 1st, 1910, up to the time of plaintiff's alleged grievances, equipped with good and sufficient spark-arresters?

"A. No.

"Interrogatory No. 26. Was any fire kindled by the locomotive engines which extended to the lands of the plaintiff and his assignors?

"A. No."

It will be observed from the answers to the special interrogatories, the jury found for the appellant as to negligence upon the questions submitted, except Interrogatories Nos. 9, 10, 13, 15 and 16 and in answer to such latter interrogatories the jury found negligence against the appellant in the burning of slashings at Camp 5 in the month of July, and setting of a spark on Camp 7 branch; by the special verdict for the defendant and appellant upon all questions except those embraced in Interrogatories Nos. 9, 10, 13, 15 and 16, which are found in favor of the respondent, and upon which the general verdict is in accord.

A motion for a new trial was made and overruled, and this appeal is from the judgment and from the order overruling the motion for a new trial.

The first contention presented in this court by counsel for the appellant is, that the special verdict controls the general verdict. This contention is correct. Sec. 4397, Rev. Codes, provides: "In an action for the recovery of money only, or specific real property, the jury in their discretion may render a general or special verdict. . . . . Where a special finding of fact is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly."

The rule thus announced is approved and followed by this court in the following cases: *Bradbury v. Idaho etc. Imp. Co.,* 2 Ida. 239, 10 Pac. 620; *Gwin v. Gwin,* 5 Ida. 271, 48 Pac. 295; *Menasha Woodenware Co. v. Spokane etc. Ry. Co.,* 19 Ida. 586, 115 Pac. 22.

The next question presented, and the controlling question in this case, is: Does the evidence support the verdict of the jury?

The evidence is very voluminous; it covers 1,700 pages of typewritten matter. It is conflicting upon the question of negligence of the plaintiff and the cause of the fire which burned over the lands of plaintiff and his assignors and destroyed the timber upon the lands of the plaintiff and his assignors, which resulted in the injury complained of in this action.

In the scope of a judicial opinion it is impossible to detail and point out the evidence which tends to support the theory of the appellant or the respondent. To detail this evidence would make an opinion very lengthy and cumbersome. We shall, therefore, refer in a general way to the evidence and what the evidence tends to show, and upon which the jury based its verdict.

The evidence is to the effect that, in the summer of 1910, there were many disastrous forest fires in the section of country involved, and that a long, dry season was followed by intensely hot and sultry weather, and that high winds raged. The Blackwell Lumber Company was the owner and in control of a large area of timber land lying west and north and south of the lands of the respondent and his assignors. The company owned and operated a railroad extending from Mica Bay, which railroad passes around within a mile or so of the lands of the respondents upon the south and west, and encircles the land of respondent and his assignors upon the east, south and west. The railroad is located west of the lands of the appellant, and the nearest point to the lands of the respondent and his assignors is about a mile from the closest tract of land. Upon this railroad the railroad company established what is generally designated as Camp 5, from which branch lines radiate to the places where most of the logging was carried on. Camp 5 was headquarters for all this work, and was the western or northern terminus of the main railroad from which branch lines extended. The closest tract of land of the plaintiff and his assignors to the

railroad near Camp 5 was that of Pfirman, one of the assignors of plaintiff, and was within a distance of less than a mile east of the railroad. The appellant was the owner of all the timber between Camp 5 and the Pfirman place. The other assignors owned the timber upon the lands to the east and north of the Pfirman tract, and the plaintiff owned all the timber immediately adjoining the lands of the settlers on the west. Camp 7 was on the land of the railroad which runs past Camp 5, and is located northeast of Camp 5, about a mile in a northeasterly direction, and is about three-fourths of a mile from the Pfirman tract. Camp 8 is north of Camp 5 about a mile and a half. These various camps were located in draws, which were lower than the lands to the east in the direction of plaintiff's lands, the latter being higher than the different camps. The lumber company was cutting timber during the summer of 1910 up to August, in sec. 29 and sec. 32. Camp 8 was located at the northeast corner of sec. 29 and Camps 5 and 7 were located upon sec. 32, and these two sections joined secs. 28 and 33 on the north and are joined on the east by secs. 33 and 27, and sec. 26 is east of sec. 27, in which the lands of the respondents were located. After June 1, 1910, the tree-tops were not burned and covered the ground intervening between Camp 5 and the branch lines radiating from that point and the timber lands of the plaintiff.

The evidence shows that a fire was started by the appellants on Camp 7 branch and that this was about a mile from Camp 5 along the Camp 7 branch. The direction of the winds at the time this fire was started was from the southwest, and was driving the fire northerly and easterly from Camp 7 in the direction of the lands of the plaintiff. This fire was noticed on August 2d, and later the fire was noticed on the different claims of the settlers. There was also seen a fire at Camp 5 running east, and there was no fire west and south of the Blackwell works at that time. These two fires, the evidence shows, were burning from the west in an easterly direction in the direction of the appellant's lands, and there were no fires on the Blackwell land before that time, and the

fires were traveling from the direction of the Blackwell operations and works in the direction of the respondent's lands. The lands of the plaintiff were burned over about the 3d or 4th of August. These various fires were traced by different witnesses from Camp 5 and from Camps 7 and 8, and the fire was shown to have been set just east of Camp 8, and was traced north and east from that camp. It also appears from the evidence that the slashings that were burned in Camp 5 were east and north of the camp; there was no fire west of it; the lands were clean on the west side of the railroad. This fire was traced to a point a mile north of Camp 8 and also in the direction of Camp 5. The general tendency of the evidence, and upon which the jury seems to have based the judgment, was that the fires set out at Camps 7 and 5 were in fact set out by the Blackwell company for the purpose of back-firing. This meant the burning of the timber around the camp so that fire coming from other directions could not approach the lands of the plaintiff west and east of the railroad. The evidence also shows that these fires which were set out by the company were not controlled by the company, and that they continued to burn and travel north and east from where they were set out, and that they traversed the section lying between the railroad and the lands of the plaintiff, and reached the plaintiff's lands where the timber was burned.

Because of the general character of the territory, the draws and mountains covered by the fires and the scarcity of persons in the community, and the fact that no witness saw the actual start of any fire or its exact course, and no witness saw the fire all the time in its course of traveling, the cause and course of the fire in the present case can only be determined from all the circumstances shown upon the trial, and the direct evidence upon conditions and surroundings no doubt was taken into consideration by the jury, which points to satisfactory and convincing conclusions.

The appellant introduced considerable testimony to show that the fire which caused the injury to plaintiff's land came from a point near what is known as Camp 6, an old abandoned

camp of the appellant which was located in sec. 25 in the state of Washington, and across the said land and about one and one-half mile northeast from Camp 7 and about the same distance southeast from Camp 8, and that said fire from the place of starting traveled north into sec. 24 and then east, north of Camp 8, through secs. 20 and 21, and then south between secs. 21 and 22 down to the south lines of said sections near the lands owned by some of the assignors of plaintiff in secs. 28 and 27.

The course of this fire is shown fairly by the evidence from the point where it was started to a point between secs. 28 and 27 where the lands of Carlson and Huber, assignors of the plaintiff, were located. There is, however, no evidence or anything to indicate that it ever reached the lands of the respondent or his assignors, but it was near there, and it is barely possible that the fire may have reached the lands and destroyed the timber for which this action is brought. The jury, however, took the view that said fire was not the one that caused the damages, but that the damages resulted from the fires that were set out by the appellant near Camps 5, 7 and 8. From a careful consideration of all the evidence in the case, we are of the opinion that it is sufficient to support the findings of the jury.

In finding No. 9 the jury found that the appellant set out fires in slashings and down timber on its timber lands and holdings near its railroad for the purpose of clearing said lands and the lands which it owned, and that this fire was set out in brush and inflammable materials subsequent to June 1, 1910. The jury also found that the company burned brush and other inflammable material, and set out and caused to be set out fires in slashings on its lands subsequent to the 1st day of June, 1910, without obtaining permits in writing, and without sufficient help to control it and without guarding the same. In finding No. 13 the jury found that the fire was set out in Camp 5 to protect the camp and back-fire, and that such fire was not put out by the defendant, and that such fire extended to the lines of the plaintiff and his assignors, and that this fire was caused

by burning slashings at Camp 5; and the jury found further that these fires were the result of negligence on the part of the appellant in failing to put forth efforts to control and put out such fires, and that by reason of such negligence the plaintiff's lands were burned.

We think these findings are also sustained by sufficient evidence.

Counsel for appellant very strenuously contend that there is no direct evidence in this case which proves negligence on the part of appellant in putting out the fires in the first instance and in an effort to control such fires after being set out, and in the prevention of such fires reaching the lands of the plaintiff and his assignors; and that, in this case, as there is nothing but circumstantial evidence to prove such negligence, it was the duty of the respondent in resting upon such evidence that such evidence should show clearly, satisfactorily and convincingly the negligence and the fact that the negligence is the proximate cause; that every link in the chain must be there just the same as if a man's life depended upon it in a criminal case. While this rule is sustained by some authorities, it has never been recognized by the courts of this state.

In the case of *Adams v. Bunker Hill etc. Min. Co.,* 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844, in discussing this question this court said: "There are very few things in human affairs, and especially in litigation involving damages, that can be established to such an absolute certainty as to exclude the *possibility* or even some *probability,* that another cause or reason may have been the true cause or reason for the damages rather than the one alleged by the plaintiff. But such *possibility,* or even *probability,* is not to be allowed to defeat the right of recovery where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause."

In that case this court quoted and approved the case of *Texas & Pac. R. Co. v. Gentry,* 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. ed. 186, as follows: "When a given state of facts

is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. . . . . It is only where the facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is ever considered as one of law for the court.'' In that same case the court quoted from the syllabus in the case of *Sioux City & Pac. Ry. Co. v. Stout*, 17 Wall. (84 U. S.) 657, 21 L. ed. 745, in which the supreme court of the United States said: ''If upon any construction which the jury is authorized to put upon the evidence, or by any inference they are authorized to draw from it, the conclusion of negligence can be justified, the defendant is not entitled to a nonsuit, but the question of negligence must be left to the jury.''

In the case of *Adams v. Bunker Hill etc. Min. Co., supra*, this court also said: ''While, perhaps, no single fact or circumstance standing alone that has been shown by the plaintiff would justify the jury in saying that it alone established negligence on the part of the defendant, still when all the facts and circumstances that were shown are taken and considered together, they are sufficient to go to the jury. . . . . The court may properly, and, in fact, should say when no facts have been established to support the plaintiff's case, but the court cannot say what facts and circumstances shall be believed and what may not be believed, nor can the court determine as to what conclusions a jury might reach from a certain state of facts and train of circumstances from which different conclusions might be reasonably reached by different minds.''

It is a recognized rule of law in this state in a civil suit, where negligence is the issue for the jury to determine, that it is sufficient if the evidence, whether direct or circumstantial, creates a preponderance of the proof. (*Adams v. Bunker Hill etc. Min. Co., supra*.)

Circumstantial evidence is legal evidence, and if the facts are shown by circumstantial evidence, and are such that reasonable men may reasonably differ upon the question whether there was negligence or not, and the jury conclude that there

was negligence, the verdict of the jury should not be set aside or reversed. (*Meier v. Northern Pac. Ry. Co.,* 51 Or. 69, 93 Pac. 691; *Chicago R. I. & P. Ry. Co. v. Wood,* 66 Kan. 613, 72 Pac. 215.) So in the present case, if the facts are such that more than one reasonable conclusion or inference can be drawn from the circumstantial facts in evidence,—one that negligence has been shown, and the other that negligence has not been shown,—and the jury decide and determine that negligence has been shown, the action of the jury should not be disturbed.

A number of questions have been argued, relating to the action of the trial court in admitting and refusing evidence. We have examined all these objections and we find no substantial error which would justify a reversal of the judgment upon the court's ruling thereon. As observed above, the evidence was mostly circumstantial, and many questions were asked which would at first glance appear to be immaterial, but when considered with other circumstances might become material by reason of their relation or connection with some other material fact. We therefore find no error in the trial court in overruling objections made to evidence offered, or in admitting evidence against objections made to such evidence.

Exceptions were taken to instructions given and also to instructions requested by appellant and refused by the trial court, and exceptions were also taken to certain instructions requested and modified by the trial court. From an examination of the instructions given by the trial court, we think the trial court correctly instructed the jury, when the instructions are all taken and considered as the law of the entire case; the instructions requested by the defendant and refused by the trial court were practically covered by the instructions given by the trial court, where such instructions stated the law; and where they did not, the court rightly refused to give such instructions. We find no error in the instructions.

The next contention made by appellant is that the damages are excessive. We have gone carefully over the evidence which relates to the value of the property destroyed, and there is sufficient evidence to sustain the verdict to the extent of

the amount found by the jury. We think the weight of the evidence is in favor of the verdict.

The judgment in this case is therefore *affirmed.* Costs awarded to respondent.

Sullivan, J., concurs.