747 P.2d 18

**Bill NEBEKER, Individually, as Guardian ad litem of Jan Nebeker, Jackie Nebeker and Paul Nebeker, and as Personal Representative of the estate of Evelyn Nebeker, Plaintiff-appellant,**

v.

**PIPER AIRCRAFT CORPORATION, a Pennsylvania corporation; Queen Bee Air Specialties, Inc., an Idaho corporation; Charles A. Kemper and D. Gail Kemper, Officers of Queen Bee Air Specialties, Inc.; and Charles A. Kemper and D. Gail Kemper, husband and wife, Individually, Defendants-respondents.**

**QUEEN BEE AIR SPECIALTIES, INC.; Charles A. Kemper and D. Gail Kemper, Counterclaimants,**

v.

**Bill NEBEKER, Individually, as Guardian ad litem of Jan Nebeker, Jackie Nebeker and Paul Nebeker, and as Personal Representative of the estate of Evelyn Nebeker, Counterdefendant.**

No. 16078.

Supreme Court of Idaho.

June 25, 1987.

Rehearing Denied Oct. 8, 1987.

Bistline, J., filed dissenting opinion, and filed opinion dissenting from denial of petition for rehearing, in which Huntley, J., concurred.

**610**

Wright, McNamara, Homer & Davis, Idaho Falls, Kutsko, Moran & Mullin, Patrick T. Hall (argued), San Francisco, Cal., for appellant.

Merrill & Merrill, Gary T. Dance (argued), Pocatello, for respondent Piper Aircraft Corp.

Doerr & Trainor, John A. Doerr (argued), Twin Falls, for respondents Queen Bee Air Specialties, Inc., and Charles and D. Gail Kemper.

BAKES, Justice.

Plaintiff appellant Bill Nebeker brought an action, both for himself and as guardian ad litem for his three minor children, for the wrongful death of his wife, Evelyn Nebeker. The district court dismissed that portion of Nebeker's claim as guardian ad litem for the three minor children on the ground that they were not proper parties plaintiff in the wrongful death action. Nebeker appeals the decision of the district court dismissing his claim as guardian ad litem for the three minor children.

Evelyn Nebeker died in a plane crash on August 17, 1980. The aircraft, a Piper Arrow which had been rented from respondent Queen Bee Air Specialties by Mr. Nebeker, crashed on the return leg of a trip the Nebekers took from Idaho Falls to Jackson, Wyoming. Mr. Nebeker, who was piloting the aircraft, survived, as did all three children who were on board the aircraft at the time of the accident. Mrs. Nebeker died in the crash. The district court dismissed the claim by Nebeker, as guardian ad litem for the children, based on our decision in *Schiess v. Bates*, 107 Idaho 794, 693 P.2d 440 (1984).

Appellant recognizes, as did the district court, that our recent decision in *Schiess v. Bates, supra*, is directly on point and controls the result in this case. *Schiess* held that a surviving spouse is the sole intestate "heir," to the exclusion of surviving children, where the entire estate of the deceased spouse is community property and, accordingly, the surviving spouse is the only proper party plaintiff in an action for wrongful death of the deceased spouse. Nevertheless, appellant challenges the soundness of the *Schiess* decision on grounds that: (1) it improperly characterized prior Idaho case law interpreting our wrongful death statute; (2) it failed to give proper recognition to the legislative intent with regard to the wrongful death statute; and (3) its holding violates the equal protection clause of the fourteenth amendment to the United States Constitution when applied to appellants in this case. Finding all three reasons urged in support of overruling *Schiess* to be without merit, we affirm the district court's decision.

## I.

■ The wrongful death statute in effect at the time of Mrs. Nebeker's death in 1980 provides that a decedent's "heirs or personal representatives may maintain an action for damages against the person" whose "wrongful act or neglect" brought about the decedent's death. I.C. § 5–311. The 1980 version, however, did not define the term "heirs." In 1913 this Court held that the term "heirs" was not to be defined with some common law definition of "heirs"; rather, this Court held that the term referred to "statutory heirs" as defined in the statute providing for intestate succession. *Whitley v. Spokane & Inland Empire R.R.*, 23 Idaho 642, 662, 132 P. 121, 127 (1913), *aff'd* 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060 (1915). Justice Ailshie, writing for a unanimous court in *Whitley*, specifically held that for purposes of the wrongful death statute, "heirs" were to be determined by reference to the statutes of

descent and distribution in effect at the time of decedent's death. "An heir is 'one who on the death of another becomes entitled by operation of law to succeed to the deceased person's estate, as an estate of inheritance....' Our [intestate succession] statute [Revised Code § 5702] defines who shall inherit the property of a deceased person." *Id.* at 662, 132 P. at 127. From the Court's 1913 decision in *Whitley*, continuing to the present day, this court has consistently held that the term "heirs" as used in the wrongful death statute is to be defined to mean those who would take under the intestate provisions of the probate code in effect at the time of the decedent's death. *Schiess v. Bates, supra; Everett v. Trunnell*, 105 Idaho 787, 673 P.2d 387 (1983); *Hogan v. Hermann*, 101 Idaho 893, 623 P.2d 900 (1980).

Less than two years ago, in *Schiess v. Bates, supra,* we reaffirmed this long established rule. In *Schiess*, the decedent's spouse and her children filed a wrongful death action. The defendant moved for dismissal of the children on the grounds that they were not "heirs" of the decedent and therefore not proper parties plaintiff under the wrongful death statute. On appeal this Court unanimously held that the Schiess children were not proper parties and directed the district court to dismiss them from the action. The rationale for our decision was in keeping with the long established rule as stated above.

> "To be proper parties plaintiff for the wrongful death of Mr. Schiess, I.C. § 5–311 requires the children to be 'heirs' of Mr. Schiess. We have defined the word 'heirs' in the context of § 5–311 as referring to 'persons who are entitled to inherit the property of an intestate, according to the laws of intestate succession in effect *as of the date of death.*' *Everett v. Trunnell,* 105 Idaho 787, 789, 673 P.2d 387, 389 (1983)." *Schiess v. Bates,* 107 Idaho at 796, 693 P.2d at 442 (emphasis in original).

The court then went on to hold that under I.C. §§ 15–2–102 and 15–2–103, the intestate provision in effect as of the date of death of Mr. Schiess, the Schiess children would not be considered "heirs" of Mr. Schiess

unless he had left separate property "with a value in excess of $50,000." *Id.* Since in that case there were no allegations of Mr. Schiess leaving that amount of separate property, we held that the Schiess children were indeed improper parties to the action. The surviving spouse, in *Schiess,* was the only proper party to maintain the wrongful death action.

The *Schiess* case directly controls the result in this case. As in *Schiess,* the intestate provision in effect at the time of Mrs. Nebeker's death is I.C. § 15–2–103 and, as in *Schiess,* there are no allegations that Mrs. Nebeker died leaving separate property valued in excess of $50,000. Therefore, only the surviving spouse, Bill Nebeker, is "entitled to inherit the property of [the] intestate" spouse. *Schiess v. Bates, supra* at 796, 693 P.2d at 442. The Nebeker children, as the Schiess children before them, are not proper parties plaintiff to any action for damages under the wrongful death statute.

Appellant nevertheless attacks the *Schiess* decision as being unsound, and creating a new rule of law previously unknown in this state. Appellant contends that children, until *Schiess,* had always been considered proper parties plaintiff to an action for the wrongful death of one of their parents. In some cases prior to *Schiess,* children, as plaintiffs, did recover damages under the wrongful death statute for the death of a parent. *E.g., Hepp v. Ader,* 64 Idaho 240, 130 P.2d 859 (1942); *Lebak v. Nelson,* 62 Idaho 96, 107 P.2d 1054 (1940); and *Manion v. Waybright,* 59 Idaho 643, 86 P.2d 181 (1938). However, in none of those cases were children permitted to recover damages under our wrongful death statute unless it was determined that they were "heirs" under the intestate provision of the probate code at the time of the death of their parent. Not one single case since the adoption of our wrongful death statute has held that children who did not qualify as "heirs" under the intestate succession law were, nevertheless, considered to be "heirs" for purposes of the wrongful death statute. While not every wrongful death case has addressed the is-

sue, every case that did has uniformly held that claimants (whether children, spouses, parents or other heirs) qualify or do not qualify as proper parties plaintiff *solely* on the strength of their qualification as "heirs" under the intestate succession provisions in effect at the time of the wrongful death of the deceased.

Indeed, appellant's argument would be equally applicable where the challenging plaintiffs are the parents of the deceased, rather than the children. Yet, our decisions in the cases of *Hogan v. Hermann*, 101 Idaho 893, 623 P.2d 900 (1980), and *Everett v. Trunnell*, 105 Idaho 787, 673 P.2d 387 (1983), clearly demonstrate that only those who qualify as "heirs" under the intestate succession statute are proper parties plaintiff in wrongful death actions. In both *Hogan* and *Everett* the parents of the deceased sought to bring an action for wrongful death of their child. In *Hogan* the parents were held to be proper parties plaintiff, while in *Everett* they were not. The contrasting results reached in those two cases, which were decided within three years of each other, are entirely attributable to the existence of two different intestate succession statutes in effect at the time of the deaths. In *Hogan*, under I.C. § 14–103, the intestate succession statute in effect in April of 1972, the time of the wrongful death, the parents would have inherited a portion of the intestate estate of their child, and accordingly they were proper parties plaintiff in the wrongful death action. In *Everett*, under I.C. § 15–2–102 of the Uniform Probate Code in effect in 1979, the date of the wrongful death, the parents would *not* inherit any portion of the intestate estate of their child, and therefore they were held not to be proper parties plaintiff in a wrongful death action. If appellant's theory regarding who constitutes proper parties plaintiff were accepted, not only would we be overruling our

decision in *Schiess v. Bates, supra*, but also effectively overruling the holding in *Everett*, and the law announced in *Hogan*. In short, appellant's proposed theory is directly contrary to our entire body of case law dealing with wrongful death actions. Appellant's argument fails to recognize the rationale of this Court's cases dealing with the issue beginning with the *Whitley* decision and continuing through our decision in 1984 in *Schiess*. The *Schiess* decision is entirely consistent with this unbroken line of cases based on the interpretation of the word "heirs" in the wrongful death statute, as first defined in the *Whitley* case in 1913, and we reaffirm it.

## II.

Next, appellant asserts that even if *Schiess* properly followed prior case law on the issue, it failed to correctly ascertain and follow legislative intent with regard to who may properly bring a wrongful death action in this state. This assertion is premised on appellant's interpretation of legislative action: (1) adopting the intestacy provisions of the Uniform Probate Code in 1971; and (2) amending of the wrongful death statute in 1984.

## A.

■ In 1971 the Idaho legislature extensively revised Idaho's statutes relating to descent and distribution on death. For the most part, such prior statutes were repealed *in toto* and replaced by provisions of the Uniform Probate Code. 1971 Idaho Sess. Laws, ch. 111, p. 233. It was at this point in time that the intestate succession laws changed, and the "separate property in excess of $50,000 in value" requirement became part of the intestate succession provisions relating to children or "issue" of the decedent.[1] Appellant argues that when

---

1. Since their initial enactment, the intestate succession laws have changed several times. As initially enacted in 1887, the intestate succession provisions relating to both community property and separate property (Rev.Stat. §§ 5713 and 5702 respectively) provided that to the extent a deceased parent left any property, community or separate, surviving children received a por-

tion of that property absent a contrary testamentary disposition. Under this intestate succession regime, children would always be heirs, and thus proper parties plaintiff under the wrongful death statute. In 1911 the Idaho legislature amended § 5713 so as to preclude children from taking any community property in the absence of a testamentary disposition of

the legislature enacted the Uniform Probate Code, it never intended thereby to preclude children from bringing wrongful death actions. As support for this interpretation of legislative intent, appellant cites I.C. § 15–1–102. That section provides as follows:

"**15–1–102. Purposes—Rule of construction.**—(a) This code shall be liberally construed and applied to promote its underlying purposes and policies.

(b) The underlying purposes and policies of this code are:

(1) to simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons;

(2) to discover and make effective the intent of a decedent in distribution of his property;

(3) to promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors;

(4) to facilitate use and enforcement of certain trusts;

(5) to make uniform the law among the various jurisdictions."

Since, appellant argues, this section makes no reference to any intent to affect the right of children to bring wrongful death actions, the legislature intended such a right to continue as before. This argument, in reality, supports the opposite result.

First, as discussed in part I, the right of children to bring wrongful death actions before the adoption in 1971 of the Uniform Probate Code was based on their right to succeed to the decedent's estate under the laws of intestate succession in effect as of the date of death. The legislature did intend that the wrongful death statute be applied in the same manner as it always

had been, *vis.* "heirs" would be determined by reference to the intestate succession provision in effect at the time of death. For three quarters of a century, this Court has consistently and continuously held that whether or not a person qualifies as a proper party plaintiff under the wrongful death statute (as an "heir" of the decedent) depends on whether such a person would be considered an "heir" under the intestate succession provision in effect as of the date of death. In enacting the new Uniform Probate Code intestate provisions defining a decedent's intestate successors, the legislature is presumed to have had knowledge of our consistent interpretation of "heirs" in the wrongful death statute, I.C. § 5–311. *See Wilder v. Redd,* 111 Idaho 141, 143, 721 P.2d 1240, 1241, 1242 (1986); *C. Forsman Real Estate Co., Inc. v. Hatch,* 97 Idaho 511, 515, 547 P.2d 1116, 1120 (1976); *Oregon Short Line RR. Co. v. Pfost,* 53 Idaho 559, 576, 27 P.2d 877, 883 (1933).

Second, appellant has failed to recognize that in enacting the provisions of the Uniform Probate Code, the Idaho legislature at the same time made substantial revisions of other non-probate sections of the Idaho Code, to bring them into conformity with the new Uniform Probate Code. *See* 1971 Idaho Sess. Laws, ch. 111, p. 236 (Title of Act language referring to amendments made to other sections of the Idaho Code to bring into conformity with probate provisions, *i.e.,* sections affected by adoption of the Uniform Probate Code, *e.g.,* laws regarding: partition of real estate, liens, foreign corporations doing business in Idaho, commitment of insane, etc.). The legislature, while making these numerous other *express* changes to other sections affected by adoption of the Uniform Probate Code, did not amend the wrongful death statute,

such by the deceased parent. The intestate succession provisions governing separate property remained unchanged, however, until the legislature in 1971 adopted the Uniform Probate Code. The Uniform Probate Code provision limited the right of children to receive an intestate share of the separate property to those estates where the separate property exceeded $50,000 in value. Thus, since 1911, children of a deceased parent were not considered heirs under the intestate

succession statutes unless the deceased parent's estate contained some separate property. If the estate contained solely community property, children would take nothing under the intestate succession provisions in effect and thus would not be considered heirs. The legislature's action in adopting the Uniform Probate Code in 1971 did nothing to change this result insofar as community property is concerned.

a statute which, like those it did amend, would also be affected by adoption of the Uniform Probate Code. In *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986), this Court held that where the legislature expressly states one thing it is deemed to have excluded another, *expressio unis est exclusio alterius. Id.* at 224, 723 P.2d at 763, n. 7. Having failed to amend the wrongful death statute, while at the same time amending other statutes affected by the new Uniform Probate Code, it must be presumed that the legislature intended that this Court continue its practice of looking to the intestacy provisions to determine heirship for purposes of the wrongful death statute.

### B.

 In 1984, after the deaths in both the *Schiess* case and the instant case, the Idaho legislature amended the wrongful death statute, I.C. § 5–311. In that amendment the legislature *for the first time* enacted a statutory definition of "heirs" as used in the wrongful death statute. As amended, I.C. § 5–311 provides that the term "heirs" includes, *inter alia,* "the decedent's spouse, children, stepchildren, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relative and adoptive brothers and sisters." Appellant argues that by enacting this amendment, the legislature intended to demonstrate that its intent has always been that children are always proper parties plaintiff to a wrongful death action for damages resulting from a parent's death. This argument is likewise seriously flawed.

It is the long standing rule in this state that when the legislature amends a statute it is deemed, absent an express indication to the contrary, to be indicative of *changed legislative intent. Schafer v. Ada County Assessor,* 111 Idaho 870, 728 P.2d 394 (1986); *Lincoln County v. Fidelity and Deposit Co. of Maryland,* 102 Idaho 489, 632 P.2d 678 (1981); *Totusek v. Dept. of Employment,* 96 Idaho 699, 535 P.2d 672 (1975); *Futura Corp. v. State Tax Commission,* 92 Idaho 288, 442 P.2d 174 (1968); *McKenney v. McNearney,* 92 Idaho 1, 435

P.2d 358 (1967); *Hawkins v. Chandler,* 88 Idaho 20, 396 P.2d 123 (1964); *Hopson v. North Am. Ins. Co.,* 71 Idaho 461, 233 P.2d 799 (1951); *Stewart v. Common School Dist. No. 17 of Owyhee County,* 66 Idaho 118, 156 P.2d 194 (1945). It is likewise the long standing rule of this jurisdiction that an amendment to an existing statute will not, absent an express legislative statement to the contrary, be held to be retroactive in application. *Johnson v. Stoddard,* 96 Idaho 230, 526 P.2d 835 (1974); *Edwards v. Walker,* 95 Idaho 289, 507 P.2d 486 (1973); *Peavy v. McComvs,* 26 Idaho 143, 140 P. 965 (1914). Acceptance of appellant's argument would violate both these long standing rules and, therefore, the argument is rejected.

### III.

 Finally, appellant asserts that the holding in *Schiess* unconstitutionally creates a "suspect" classification based on wealth (rich family/poor family) which cannot withstand a "strict scrutiny" analysis. We disagree.

### A.

First, we find no distinct wealth classification created by our holding in *Schiess.* Appellant asserts that, by limiting children as proper parties plaintiff in a wrongful death action only to those whose parents have left in excess of $50,000 in separate property, this Court has limited the right to recover under the wrongful death statute to children of wealthy parents. The assertion is flawed. For instance, it is possible that children of wealthy parents (*e.g.,* $1,000,000 estate) may not be "heirs" under the intestate succession statute if the parents at the time of death have *no* separate property. In such a case the surviving children, though coming from a "wealthy family," would not be proper parties plaintiff in a wrongful death action. Likewise, if the decedent parent left only separate property valued at $55,000, his children, though not coming from a "wealthy family," would nonetheless be proper parties plaintiff in a wrongful death action. Thus,

it appears that the statutory classification affirmed by *Schiess* is not one based upon wealth. Rather, the classification is that of "heirs" versus "nonheirs."

Second, even if the holding in *Schiess* can be construed as creating a "wealth" classification, such a classification has never been held to be a "suspect" classification, thereby invoking strict scrutiny analysis. In *San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), the United States Supreme Court unequivocally stated: "This court has *never* heretofore held that wealth discrimination *alone* provides an adequate basis for invoking strict scrutiny...." *Id.* at 28–29, 93 S.Ct at 1294 (emphasis added). Thus, appellant's assertion that any supposed wealth classification created by *Schiess* must pass strict scrutiny analysis is erroneous.

### B.

The holding of *Schiess* involved an interpretation of legislation dealing with social welfare and economics, *i.e.*, the wrongful death statute. As such, the proper standard for equal protection analysis is the "rational basis" standard. In *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), the Supreme Court held: "In the area of economics and social welfare, a state does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis' it does not affect the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Id.* at 485–86, 90 S.Ct. at 1161–62.

In *Parham v. Hughes*, 441 U.S. 347, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979), the Supreme Court went further in holding "that a state has a legitimate interest in the maintenance of an accurate and efficient system for the disposition of property at death.... This same state interest ... is also present in the context of actions for wrongful death." *Id.* at 357–58, 99 S.Ct. at 1748–49.

In *Everett v. Trunnell*, 105 Idaho 787, 673 P.2d 387 (1983), we were presented with a similar argument as that raised by Nebekers in this action. Appellants in *Everett* challenged the constitutionality of our wrongful death statute under the equal protection provisions of both the Idaho Constitution and the United States Constitution. In *Everett* we specifically upheld the statute, relying upon the United States Supreme Court decision in *Parham*, that the right to recover under our wrongful death statute was "not a fundamental right," and that the "classification scheme imposed under a wrongful death statute must merely be shown to bear some rational relationship to a permissible state objective." [2] *Everett v. Trunnell*, 105 Idaho at 790, 673 P.2d at 390.

As we stated in *Everett v. Trunnell*, *supra*, the state objective served by our wrongful death statute is to provide for those who are most likely to suffer a loss as a result of the wrongful death. The statutory scheme establishes a hierarchy which allows claims first by the surviving spouse, if any, then by children, then parents, then other relatives. The state legitimately seeks to provide for the spouse first because he or she is the person most directly affected by the death and will bear the burden of raising and supporting any surviving minor children. The objective served by the wrongful death statute dovetails with our probate, community property, and child support laws. Both the community property and probate laws of Idaho attempt to protect the vital and unified property interest which exists between husband and wife in the marital relationship. Indeed, the comments to the Uniform Probate Code provision dealing with the intestate share of a surviving spouse indicate that the objective served by those particular provisions was to promote the desire of most spouses to leave whatever property

---

**2.** In *Everett*, we also held that under the equal protection provisions of the Idaho Constitution, Art. 1, § 13, "there must be some reasonable ground or basis for the distinction between classes of persons imposed by a particular statutory scheme." 105 Idaho at 790, 673 P.2d at 390.

they have, or the majority of it, to the surviving spouse. The surviving spouse, in turn, is under a statutory obligation, I.C. § 32–1003, to provide for the needs of the minor children. Our interpretation in *Schiess* of the wrongful death statute serves this legitimate interest. The surviving spouse stands in greatest need of the resources left by the decedent. By limiting the number of persons permitted to bring a wrongful death action based on the definition of "heirs" in the intestate succession provisions, the legislature furthers the state's legitimate objective in limiting the number of claims and claimants in wrongful death actions to primarily provide an action for the surviving spouse who suffers the greatest from the loss. This is particularly important in situations where the funds available to satisfy any judgment are limited.

The wrongful death statute was intended to avoid the harshness of the common law rule that no cause of action survived the death. *Hughes v. Hudelson*, 67 Idaho 10, 169 P.2d 712 (1946); *Russell v. Cox*, 65 Idaho 534, 148 P.2d 221 (1944). The wrongful death statute created a new cause of action in favor of those who stand in greatest need of recovery, *i.e.*, the decedent's "heirs." Under the intestate provisions of the Uniform Probate Code, that person is ordinarily the surviving spouse, the person who stands most in need of a recovery. This legislative limitation on the number of plaintiffs who may bring an action is a reasonable exercise of legislative authority and bears a rational relationship to a legitimate state objective and therefore is not violative of the equal protection provisions of either the Idaho or United States Constitutions.

Accordingly, the judgment of the district court is affirmed. Costs to respondent.

SHEPARD, C.J., and DONALDSON, J., concur.

HUNTLEY, Justice, dissenting.

Having authored *Schiess*, where I, at the time, thought we were merely making a correct application of Justice Bakes' opinion in *Everett v. Trunnell*, and having thoroughly considered the exchange of views between Justices Bakes and Bistline in the instant case, I am willing to concede that this Court erred in *Schiess*.

*Everett* was not a probate proceeding. Kenneth Everett's parents were *not* trying to share in his estate. Nothing in the record in that case shows that Kenneth Everett even had any estate, other than maybe the motorcycle upon which he was riding when he was killed. The surviving spouse and child sued the Trunnels for wrongful death, and "that case was settled." *Everett*, 105 Idaho at 789, 673 P.2d at 389. What the parents were seeking to do was maintain a wrongful death action. Because Everett was killed in Idaho, the parents filed suit in Idaho.

The parents were held to have no cause of action under I.C. § 5–311 because it was only the wife and issue who qualified as heirs under the Idaho statute. Parents of a deceased child simply did not qualify as heirs under "the laws of intestate succession in effect as of the date of death." *Hogan v. Hermann*, 101 Idaho 893, 623 P.2d 900 (1980). *Everett*, 105 Idaho at 789, 673 P.2d at 389.

At the top of page 790, 673 P.2d at 390, Justice Bakes wrote that "where the decedent leaves both a surviving spouse and issue, parents of a decedent are not entitled to inherit ...," and, not being heirs, "they have no cause of action under I.C. § 5–311." Without doubt, that was correct, and all four of us agreed with him. Not the least mention was made in *Everett* as to the extent of decedent's estate, if any.

In authoring *Schiess*, I relied upon and quoted correctly from Justice Bakes' opinion:

> To be proper parties plaintiff for the wrongful death of Mr. Schiess, I.C. § 5–311 requires the children to be "heirs" of Mr. Schiess. We have defined the word "heirs" in the context of § 5–311 as referring to "persons who are entitled to inherit the property of an intestate, according to the laws of intestate succession in effect *as of the date of death*." *Everett v. Trunnell*, 105 Idaho 787, 789, 673 P.2d 387, 389 (1983). (Em-

phasis added). *Schiess, supra,* 107 Idaho at 796, 693 P.2d at 442 (footnotes omitted).

However, in the following paragraph, we stated:

> Surviving children only become "heirs" of the decedent spouse if the decedent's spouse leaves separate property with a value in excess of $50,000. *Id.*

In retrospect, I am convinced we erred in reaching such a conclusion in the absence of supporting legal authority. On reconsideration, the unsupported statement used in *Schiess* was not in accord with the law as it had always been before and in *Everett: Persons who are entitled to inherit the property of an intestate decedent are heirs within the context of I.C. § 5-311.*

It is true that in a probate proceeding, if there is no estate at all, no one inherits anything, and if there is not enough to satisfy the surviving spouse's statutory entitlement, she will not receive that much out of the estate, and the issue will receive nothing. But that is in a probate. In the context of I.C. § 5-311, the surviving spouse and issue of a decedent do qualify as heirs entitled to maintain the suit for wrongful death.

This was correctly noted in *Everett:*

> The state objective under our present wrongful death scheme is clear. Our legislature wished to change the common law to allow recovery for wrongful death, *while at the same time limiting that recovery to those persons most likely to suffer a loss. The objective was to allow suit by those persons most likely to be affected by the untimely death of a decedent, such as a surviving wife and child.* This limitation on the statutory cause of action is reasonable and bears a rational relationship to a legitimate state objective.

*Everett, supra,* 105 Idaho at 790, 673 P.2d at 390 (emphasis added).

From day one, there has not been a time in Idaho when the surviving spouse and issue of a wrongfully killed decedent did not and do not have the right to sue for that wrongful death. This is so because under the prior general intestacy laws which were in effect until 1971, and then under the Uniform Probate Code as well, both the surviving spouse and issue are entitled to inherit from their deceased husband/wife and father/mother. The fact that there may not be any estate to probate is of no consequence in making the determination as to qualifying as a decedent's heirs. It is an inescapable fact that a parent's children are entitled to inherit on the parent's death. That the estate may be nil or nearly so does not disqualify a child from being an heir. Nor does the death of a parent by reason of wrongful conduct of another preclude surviving children from having a cause of action even though there is a will leaving all of the estate to the spouse.

Mention should also be made that at the time of writing and releasing the opinion in *Schiess v. Bates,* we did not have the benefit of the views of the Montana Supreme Court which when confronted with the identical question in *Johnson v. Marias River Elec. Co-op, Inc.,* 687 P.2d 668, 671–72 (Mont.1984), stated:

> Did the legislature intend in this case, by an indirect but overwhelming stroke, to cut off forever the time-honored rights of children to recover damage for the wrongful death of their parent? If such was the intent of the legislature in 1974 when the Uniform Probate Code was adopted, it is the best kept secret of the decade. Not a single word was uttered in debate, in the legislature, in the press, or by the legal scholars who proposed or propounded the code, and sponsored it in the legislature and in seminars, that the code severed the rights of such children.
>
> . . . .
>
> Therefore, until the legislature specifically tells us otherwise, we will recognize the historical right of the issue of a decedent to join with their surviving parent to recover damages in a single wrongful death action to the extent permitted prior to the Uniform Probate Code. We are confident that this is what the legislature intended. To hold otherwise would result in consequences for which only the legislature itself should be directly responsible. In this case, it would wipe out

the right of the two minor children involved to recover damages, if the proof shows damages, that they suffered by virtue of the death of their parent.

Those who have practiced law in Idaho in the time period between the enactment of the Uniform Probate Code and our unfortunate decision in *Schiess*, plaintiff and defense attorneys alike, all treated the code's enactment as not depriving minors of a cause of action. Even when *Schiess* was pending before this Court, the statute was amended to re-assert the legislature's continued intent that minors have a claim for loss of their parents. Were we more in tune with the actual practice of law, we would follow the lead of the Montana Supreme Court in *Johnson, supra*.

BISTLINE, Justice, dissenting, and concurring also in the dissent of Justice HUNTLEY.

The case was argued orally on May 20, 1986. Less than three weeks later I authored and circulated a proposed opinion for the Court which, in my naivete, I thought would command and hold a majority of the Court, thereby rectifying the error of *Schiess v. Bates*, and preclude a second such miscarriage of justice. That opinion, with slight revisions which have been made during the ensuing year is respectfully submitted for the reader's determination as to whether it is the more respectably founded in case law, common sense, and notions of justice than the majority opinion.

I.

The sole issue on appeal is whether the decedent's children are entitled to sue for the wrongful death of their mother. The district court stated that our recent case of *Schiess v. Bates*, 107 Idaho 794, 693 P.2d 440 (1984), was "dispositive of this issue," R., Vol. 2, p. 115, and dismissed the decedent's children as improper parties plaintiff. Plaintiffs attack the validity of *Schiess*, arguing that it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Plaintiffs further argue that *Schiess*

improperly interpreted Idaho law establishing proper plaintiffs in a wrongful death action.

In *Schiess*, the decedent's spouse and her children filed a wrongful death action against the defendant. The defendant moved for the dismissal of the decedent's children, arguing that they were improper parties plaintiff. This Court agreed with the defendant, stating:

To be proper parties plaintiff for the wrongful death of Mr. Schiess, I.C. § 5–311 requires the children to be "heirs" of Mr. Schiess. We have defined the word "heirs" in the context of § 5–311 as referring to *"persons 'who are entitled to inherit'* the property of an intestate, according to the laws of intestate succession in effect *as of the date of death."* *Everett v. Trunnell,* 105 Idaho 787, 789, 673 P.2d 387, 389 (1983). (Emphasis added.)

The law of intestate succession at the time Mr. Schiess died is set forth in I.C. § 15–2–102 and 15–2–103, which provide that the surviving spouse receives all of the community property and the first $50,000, and one-half of the remaining balance, of the decedent spouse's separate property. *Surviving children only become "heirs" of the decedent spouse if the decedent's spouse leaves separate property with a value in excess of $50,- 000.* There is no allegation that Mr. Schiess owned separate property with a value in excess of $50,000; there is nothing to suggest or indicate that the Schiess children are "heirs." Therefore, they are improper parties plaintiff under I.C. § 5–311. *Schiess, supra,* 107 Idaho at 796–97, 693 P.2d at 442–43 (emphasis added) (footnotes omitted).

In *Schiess*, it was also noted that former I.C. § 5–311 under which the plaintiffs in *Schiess* sued, and under which the plaintiffs in this case sued, was repealed by chapter 158 of the 1984 Idaho Session Laws, p. 385, and replaced by a new § 5–311. *Id.* at 797 n. 2, 693 P.2d at 443 n. 2. This new section specifically defines heirs to include, among other persons, the children of a decedent. Plaintiffs do not

argue that the new § 5–311 applies to them, but rather that the new section is reflective of the legislative voice that the old statute in effect at the time of the wrongful death included as heirs any children of a decedent. I agree, and for other reasons would overrule *Schiess.*

## II.

The first case in Idaho as recognized authority was *Whitley v. Spokane & Inland Railway Co.,* 23 Idaho 642, 132 P. 121 (1913), *affirmed* 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060. In *Whitley* the Court was confronted with several issues, one of them being who qualifies as an heir under Idaho's Wrongful Death Act.[1] In answering this question, the Court stated:

An heir is *"one who* on the death of another *becomes entitled* by operation of law *to succeed* to the deceased person's estate, as an estate of inheritance; an heir at law." (Standard Dictionary; Oxford Dictionary; Bouvier Law Dictionary; Black's Law Dictionary.) Our statute defines who shall inherit the property of a deceased person. Those persons are his "heirs," and our statute, sec. 4100, authorizes the "heirs" of a deceased person or his personal representative to maintain an action such as the one at bar. *Id.* 23 Idaho at 662, 132 P. at 127 (emphasis added).

The statute in operation at the time *Whitley* was decided, which defined *"who ... becomes entitled ... to succeed ..."* was Rev. Code § 5702. That statute, in pertinent part, stated the following:

1. If the decedent leave a surviving husband or wife and only one child, or the lawful issue of one child, in equal shares to the surviving husband or wife *and child,* or issue of such child. If the decedent leave a surviving husband or wife and more than one child living, or one child living and the lawful issue of one or more deceased children, one-third to the surviving husband or wife, *and the remainder in equal shares to his*

*children* and to the lawful issue of any deceased child by right of representation.... (Emphasis added.)

It is readily apparent, then, *that when Whitley was decided children were heirs, and were therefore proper parties plaintiff in a wrongful death action.*

It is conceded that under the laws of the state of Idaho, the respondent, Mary Elizabeth Whitley, is an heir of A.P. Whitley, deceased, and that *where the deceased,* as in this case, *left no issue,* the *surviving wife and surviving mother,* the father being dead, *are his only heirs* and that they would inherit from him in equal shares. (Emphasis added). *Whitley,* 23 Idaho at 660, 132 P. at 126.

The Court cited § 5702, Revised Codes, as the only applicable provision. Section 5702 is the second section of ch. 14 of the Revised Codes and is entitled SUCCESSION, beginning at p. 432. Page 436, § 5711 informs the reader that all of the preceding sections *apply only to the separate property* of the decedents. Then follows § 5713 with which we have all been long familiar, and is entitled DEVOLUTION OF COMMUNITY PROPERTY. It provided that on death of either spouse, one-half of community property shall go to the survivor, and the other one-half shall have been subject to testamentary disposition of the deceased spouse. In the absence of testamentary disposition, that one-half will go in shares to surviving children of the deceased, but if there are none, the survivor takes all of the community property "to the exclusion of collateral heirs." These statements were determinations of heirship in circumstances of intestate succession to community property.

Nothing in *Whitley* tells us anything about the status of any property owned by the decedent in that case or even that the deceased Mr. Whitley owned any property. The concession that both the wife and the mother were heirs could not have been based upon § 5713. There very well may have been no property of any kind within

---

1. Idaho's Wrongful Death Act in 1913—found at Rev. Code § 4100—was originally enacted in 1881. *See* § 192 of CCP. It has remained virtu-

ally the same ever since, with very minor changes occurring in 1972. *See* 1972 Idaho Session laws, ch. 177, § 2, p. 445.

the State of Idaho. But the cause of action for a wrongful death occurring in Idaho was properly within the jurisdiction of the Idaho courts, and would accrue to any person who was an heir of the deceased Mr. Whitley—*as determined by Idaho law.*

Section 5702 deals specifically with intestate succession to an estate "not otherwise limited by marriage" (i.e., separate estate per § 5711) and subdivision 2 thereof covers the situation where the deceased leaves no issue, but did leave a wife and a parent, or parents:

2. If the decedent leave no issue, the estate goes, one half to the surviving husband or wife, and the other half to the decedent's father and mother in equal shares, and if either be dead, the whole of said half goes to the other. If the decedent leave no issue, nor husband, nor wife, the estate must go to his father and mother, in equal shares, or if either be dead, then to the other.

What the parties had conceded in *Whitley* was, then, not that the deceased had any separate estate, or even that there was any estate of any kind in Idaho, but that "Mother" Whitley was in the class of people created by § 5702(2) who could inherit if there was any estate to inherit.[2]

In recognition of Idaho's wrongful death statute being identical to and taken from the California Civil Code, Justice Ailshie gratuitously acknowledged what he thought was a different point of view in *Redfield v. Oakland Consolidated St. Ry. Co.,* 110 Cal. 277, 42 Pac. 822 (1895), and which Justice Ailshie called mere dictum. *Whitley, supra,* 23 Idaho at 662, 132 P. at 127. With Idaho having basically the identical statute at the time, it was in order to look at the 1895 California case, *Redfield,* and ascertain if it was indeed the dictum ascribed to it by Justice Ailshie.

A review of California jurisprudence demonstrates that the statement alluded to was not dictum, and on the contrary, contains very helpful language. Moreover, *Redfield* has been cited in California over fifty times, and in other states as well. In *Redfield* the surviving husband and two minor children brought suit to recover for the mother/wife's death. The contention was made that, California being a community property state, the husband was the only heir of the deceased wife, and the children were not heirs at all, because they would take nothing. Their statute, § 377 of the Civil Code, is identical to our § 5–311 as it was in effect in 1923, and so remained until 1984. In 1923, it was § 4100 of the Revised Code. As stated above, the language of the California court is helpful, and it is *not* at odds with the language in *Whitley:*

We think, however, that appellant is mistaken in its construction of section 337, Code Civ.Proc. The damages recoverable are not the product of the community effort or of community accumulations, *nor does the word "heirs," as there used, refer to those persons who would succeed to the money so recoverable if it had been in the possession of the community, as community property,* at the time of Mrs. Redfield's death; but *the word is used in its common-law sense, and denotes those who are capable of inheriting from the deceased person generally, and without the limitation resulting from statutes relating to the distribution of community property.*[3] ... Her personal representative might have maintained the action, but in such case the damages recovered would not have belonged to her estate, nor been liable for her debts; and the same thing would be true if the husband had died from similar injuries, and the recovery had been obtained by his personal repre-

---

2. Our majority opinion in *Hogan v. Hermann,* 101 Idaho 893, 623 P.2d 900 (1980), proceeded on the same basis, *i.e.,* that *the general statute* governing intestate succession, I.C. § 14–103(2) was the applicable statute, 101 Idaho at 895–96, 623 P.2d at 902–03, and determines who are heirs when there are no issue.

3. The California court at this point simply ruled out the statute relating to distribution of community property and referred to only the common-law "sense" which was codified identical to Idaho, as noted in *Steed v. Imperial Airlines,* 12 Cal.3d 115, 115 Cal.Rptr. 329, 524 P.2d 801 (1974).

sentative. The recovery is for the injury inflicted upon the plaintiffs personally, and not for injuries inflicted upon her; *and the word "heirs" in the statute is intended to limit the right of recovery to a class of persons who, because of their relation to the deceased, are supposed to be injured by her death. Redfield, supra,* 42 Pac. at 825–26.

As recently as 1974, the California Supreme Court, en banc, "deemed" it desirable to pause long enough to clarify some apparent misconceptions as to who can bring a wrongful death action under its § 377, our equivalent then being § 5–311, and in doing so, revisited *Redfield,* and discussed the requirements of "actually" receiving property from the decedent.

> *The question in that case was whether natural children were required to be in a position to actually inherit from their deceased mother in order that they might qualify as heirs within the meaning of section 377. In holding that it was not necessary for such children to be entitled to receive any share of the decedent's estate, this court noted, inter alia, that a recovery in a wrongful death action was not a recovery of a portion of the estate or for the injuries inflicted on the decedent, but rather for injuries actually suffered by the heirs of the decedent by reason of the latter's death.* It was in this context that the court spoke of those who were "supposed to be injured" by the death of the decedent....
>
> ....
>
> *It seems without dispute that the class of those who suffer the greatest loss upon a wrongful death are the heirs of the deceased. Heirs are those who, as a class, stand in the closest relationship to a deceased. Steed v. Imperial Airlines,* 12 Cal.3d 115, 121–25, 115 Cal.Rptr. 329, 333–34, 524 P.2d 801, 805–07 (1974) (emphasis added; footnote omitted).

What comes out of this reading is that children do not have to actually inherit property in order to be heirs for the purpose of bringing a wrongful death action;

nor is it required that the decedent died owning any property. "Heirs are those who, as a class, stand in the closest relationship to a deceased." *Id.* 115 Cal.Rptr. at 334, 524 P.2d at 806. As initially said in *Redfield,* they must have the status of being "capable of inheriting from the deceased person generally...." *Redfield, supra,* 42 Pac. at 825. "Generally" meant to the *Whitley* Court, and to the *Redfield* Court, under the general laws of intestate succession—not the special succession statutes which deal with community property—as was made clear in the first sentences of both the California Code and the Idaho Code: "When any person having title to any estate *not otherwise limited by marriage contract,* dies, ...." The 1895 and 1923 judicial definitions of heirs made by, respectively, the courts of California and Idaho have guided wrongful death actions thereafter.

In *Manion v. Waybright,* 59 Idaho 643, 660, 86 P.2d 181, 188 (1938), this Court upheld a $15,000 damage award in a wrongful death action brought by a widow *and the four children* of the decedent and widow. In *Lebak v. Nelson,* 62 Idaho 96, 115, 107 P.2d 1054, 1062–63 (1940), this Court affirmed a $23,535 damage award in another wrongful death action brought by *three children* of the decedent and the widow. In specifically affirming that part of the award which was made to the children, the *Lebak* Court stated: *"Each of the children* lost the love, care, direction, counsel, education and support of the father. Breaking the verdict down into three parts, *each child* received less than $7,850." *Id.* at 115, 107 P.2d at 1062.

In *Hepp v. Ader,* 64 Idaho 240, 245–46, 130 P.2d 859, 862 (1942), this Court acknowledged again the fact that children can sue for the wrongful death of one or both of their parents:

> It is not necessary, in this state, for a husband or wife, in order to recover for the death of the other, caused by wrongful act or negligence, to plead or prove damages arising from loss of services, food, clothing, shelter or anything else which may be measured in dollars and

cents. The same rule applies in cases where a parent sues for the death of a child *or the child for the death of a parent.* Pecuniary loss, in cases of this kind, will be presumed upon proof of death, caused by the wrongful act or negligence of the defendant, and the relationship of husband and wife, *or parent and child,* existing between the plaintiff and the deceased. (Emphasis added; citations omitted.)

In 1973 Justice Donaldson, speaking for a unanimous Court stated: "The wrongful death statutes *now in effect*[4] provide a cause of action to the *surviving spouse and issue* of a deceased married minor." *Harrigfeld v. District Court of Seventh Judicial District,* 95 Idaho 540, 542, 511 P.2d 822, 824 (1973), citing I.C. §§ 5–310 and 5–311. In *Harrigfeld,* this Court held that a *widow and the one child* of the deceased and widow "were the proper *parties* to bring an action for [the deceased's] wrongful death." *Harrigfeld, supra,* 95 Idaho at 545, 511 P.2d at 827.

It is clear, then, that for over the past 100 years—Idaho's Wrongful Death Act was enacted in 1881—children have been proper parties plaintiff where the wrongful death was of a parent.

It is significant that in all of the cases decided after *Whitley,* the Court was totally unconcerned with whether there was a separate inheritable estate that would put dollars in the pockets of heirs other than the surviving spouse. There is nothing whatever in the case law, in statutory law, or in common sense which requires an heir to receive some estate in order to have the status of an "heir" for purposes of I.C. § 5–311, our wrongful death statute. It is the mere fact of being an heir who is capable of taking under the intestate succession laws which entitles a surviving wife and/or child to come within that close relationship to the wrongfully killed decedent which gives them the right to pursue a damage claim.

*Not until Schiess was decided were children ever held to be improper parties plaintiff. Schiess* relied upon *Everett v. Trunnell,* 105 Idaho 787, 673 P.2d 387 (1983), which in turn relied upon *Hogan, supra.* A review of those cases demonstrates that *Schiess* was in error.

*Everett* properly cited *Hogan, supra,* for the principle that heirs under Idaho's Wrongful Death Act are defined as being those *"persons who are entitled to inherit* the property of an intestate, according to the laws of intestate succession in effect as of the date of death." *Everett, supra,* 105 Idaho at 789, 673 P.2d at 389. Therein the Court accordingly held that the parents of the decedent were not heirs, because the decedent left "both a surviving spouse *and issue."* *Id.* at 790, 673 P.2d at 390. In discussing the purpose of Idaho's Wrongful Death Act, Justice Bakes, writing for a unanimous Court, said the following which is significantly similar to the language of the California Supreme Court in *Steed v. Imperial Airlines* (quoted *supra,* at 621, 747 P.2d at 30):

The state objective under our present wrongful death scheme is clear. Our legislature wished to change the common law to allow recovery for wrongful death, *while at the same time limiting that recovery to those persons most likely to suffer a loss. The objective was to allow suit by those persons most likely to be affected by the untimely death of a decedent, such as a surviving wife and child.* This limitation on the statutory cause of action is reasonable and bears a rational relationship to a legitimate state objective. *Everett, su-*

---

**4.** The Harrigfelds were defendants in a wrongful death action arising out of the death of Dean Sallenger, aged 20 years, survived by a wife and child, who brought the action. At the time of Sallenger's death, he was, under I.C. § 32–101, an emancipated minor, and the action was brought under I.C. § 5–311 rather than § 5–310, which at the time purported to give the cause of action to the parents of a wrongfully killed minor. Only in 1972 did the legislature recognize that aged 20 males might marry and have issue, and amend the two statutes accordingly. This Court properly held that any legislation classification declaring different ages for attaining majority as between male and female was unjustified discrimination; hence, that Dean Sallenger was not a minor, and hence, I.C. § 5–311 was the applicable statute.

pra, 105 Idaho at 790, 673 P.2d at 390 (emphasis added).

As stated above, a review of *Everett* and *Hogan* make clear that neither had to decide whether *children* are proper parties plaintiff in wrongful death actions, and it was not until *Schiess* that the issue was decided, albeit incorrectly. *Schiess* went awry of the issue because it (1) failed to consider the 100–plus years in Idaho during which children were recognized as plaintiffs in a wrongful death action, (2) failed to recognize that the significant changes in Idaho's intestacy statute in 1971 did not alter the definition of heirs as being persons entitled to inherit, but only required a certain size of estate before there was anything for children to inherit, and (3) failed to observe that the legislature stated no purpose thereby that would preclude a child's status as an heir for purposes of wrongful death actions. A second analysis of these areas inevitably leads to the conclusion that *Schiess* was in error.

A review of the briefs and record in *Schiess* shows that neither party nor the district judge were aware that the 1971 Uniform Probate Code defined "child"—an important clue to a correct decision in that case. The word was defined in absolute conformance to language in *Redfield, supra,* and in *Whitley, supra.* Section 15–1–201(4) reads: " 'Child' includes any individual *entitled* to take as a child under this code by intestate succession...."[5] The Uniform Probate Code sets forth the purposes of the Code:

**15–1–102. Purposes—Rule of construction.**—(a) This code shall be liberally construed and applied to promote its underlying purposes and policies.

(b) The underlying purposes and policies of this code are:

(1) to simplify and clarify the law concerning the affairs of decedents, missing persons, protected persons, minors and incapacitated persons;

(2) to discover and make effective the intent of a decedent in distribution of his property;

(3) to promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to his successors;

(4) to facilitate use and enforcement of certain trusts;

(5) to make uniform the law among the various jurisdictions.

*Nothing therein even tends to suggest that the legislative understanding was that adoption of the Uniform Probate Code had as a purpose, or would be seen as precluding children as plaintiffs in wrongful death actions* where the deceased parents state did not mount up to a certain amount of money. As mentioned in footnote 5, the definition of "heirs" therein speaks to the contrary.

It is readily understood why the legislature is not chargeable with an intent to change the previously accepted definition of heirs for purposes of the Wrongful Death Act when it adopted the Uniform Probate Code: the use of heirs in both contexts involves totally different concerns and issues. In *Volk v. Baldazo,* 103 Idaho 570, 573, 651 P.2d 11, 14 (1982), Justice Shepard, speaking for a 4–1 majority, stated the purposes of Idaho's Wrongful Death Act—I.C. § 5–311—as follows:

*We deem it well settled that statutes authorizing actions for wrongful death are remedial in nature, designed to alleviate the harsh rule of common law that if an injured person died, his cause of action ceased to exist. Vaillancourt v. Medical Center Hospital of Vermont, Inc.,* 139 Vt. 138, 425 A.2d 92

---

5. The definition of "child" is to be noted more for who is excluded from the definition, to wit: "any person who is only a stepchild, a foster child, a grandchild, or any more remote descendant." Similarly, "parent," subparagraph (32), is defined as "any person *entitled to take* ... by intestate succession ...," and excludes "any person ... who is only a stepparent, foster parent, or grandparent."

Moreover, subparagraph (21) defines "heirs." " 'Heirs' means those persons, including the surviving spouse, *who are entitled* under the statutes of intestate succession to the property of a decedent." Definitely this was a recognition and continuation of the *Whitley* definition.

(1980); *Salazar v. St. Vincent Hospital*, 95 N.M. 150, 619 P.2d 826 (1980). The actions authorized by I.C. §§ 5–310 and 5–311 are not actions arising from the "surviving" rights of a decedent, *Russell v. Cox, supra, but rather are compensatory in character for the benefit of the named survivors.* (Emphasis added.)

The Court in *Schiess* was in error in being persuaded that the significant changes to Idaho's intestacy statutes in any way affected the intent and purpose of I.C. § 5–311—which went wholly unmentioned in the Idaho version of the Uniform Probate Code. Assume that a father has transferred all property, real and personal, to his wife, and then purchases for cash a $500,000 policy of insurance on his life which names as beneficiaries those persons who on his death qualify as his heirs under the general intestacy laws of the State of Idaho. The policy does not run to his estate but to his heirs at law. Only those who so qualify under the law will receive checks from the insurance company. His children will be in that class, notwithstanding that none of them will inherit a dime from his estate—because he has none. This is so because heirs are persons who are entitled to inherit according to the laws of intestate succession in effect as of the date of death. *Everett v. Trunnell*, 105 Idaho 787, 673 P.2d 387 (1983) (Bakes, J.). Similarly, the wrongful death statute declares who qualify as heirs at law, and has nothing to do with an actual probate proceeding.

If it were needed, a pertinent 6–1 decision of the Montana Supreme Court, released two and one-half months prior to *Schiess*, but not available when the briefs of the parties were filed, now relied on by the Nebeker children, sustains backing away from *Schiess*. With facts virtually identical to those before us, the Montana Court forcefully stated its reasons as follows:

All statutory construction by courts is an attempt to search out the will of the legislature. *Did the legislature intend in this case, by an indirect but overwhelming stroke, to cut off forever the time-honored rights of children to recover damages for the wrongful death of their parent? If such was the intent of the legislature in 1974 when the Uniform Probate Code was adopted, it is the best kept secret of the decade. Not a single word was uttered in debate, in the legislature, in the press, or by the legal scholars who proposed or propounded the code, and sponsored it in the legislature and in seminars, that the code severed the rights of such children.* Tens of actions for wrongful death damages have been brought by or on behalf of children before and since the adoption of the Uniform Probate Code, and yet *no legal writer has sounded the tocsin that a legal upheaval of such earthquake proportions in tort damages actions had occurred.*

We choose to rule that such was not the intention of the legislature. In the monumental task of adopting the Uniform Probate Code, it is remarkable that so few anomalies have occurred. The legislature was careful to guard from conflict the subjects with which the Code was concerned, probate, guardianship and estate proceedings. The Code states:

"**72–1–106. Uniform Probate code to take precedence.**[6] Should any provision of this code conflict with any provisions of other statues of the State of Montana *relating to probate, guardianship or other subjects incorporated in this code* and such other statute or statutes was or

---

**6.** The Idaho version of the Uniform Probate Code ch. III, 5.2.1971 at p. 237, commences with similar language:

"Be It Enacted by the Legislature of the State of Idaho:

The comprehensive recodification of the law *of wills, decedents, estates, guardianships,* and *non-probate transfers* is enacted as follows:" (emphasis added)

It is also well in order that the reader compare the Idaho version Statement of Purpose, I.C. § 15.1.102 with the Montana statute, Section 72–1–102, m.c.a. Neither Statement of Purpose shows any legislative intent to modify long-existing code provisions which provided actions for wrongful death.

were adopted prior to the enactment of this code, the provisions of this code shall be deemed to be controlling." (Emphasis added.)

It was the apparent intention of the legislature that the Code should control with respect to its inherent subjects of probate, guardianship and estate matters. It left open the effect on statutes involving other subjects not intrinsic to the Probate Code.

*Therefore, until the legislature specifically tells us otherwise, we will recognize the historical right of the issue of a decedent to join with their surviving parent to recover damages in a single wrongful death action to the extent permitted prior to the Uniform Probate Code.* We are confident that this is what the legislature intended. *Johnson v. Marias River Electric Co-op, Inc.,* 687 P.2d 668, 671–72 (Mont.1984). (Emphasis added.)

In addition to the majority opinion of the Montana Supreme Court, consisting of Justice Sheehy, Harrison, Shea and Gulbrandson, there was a separately concurring opinion consisting of Justice Morrison, joined by Justice Weber, which goes as ignored in the opinion authored by Justice Bakes as is the Montana majority opinion. This second Montana opinion is as equally persuasive as the majority, and should merit this Court's attention. The two cases, Montana's and Idaho's, arise in the exact same context. Justice Morrison wrote:

I concur in the result. As the majority opinion correctly notes, section 27-1-513 MCA, known as the wrongful death statute, has been with us since 1877. At the time of its enactment the decedent's natural children met the statutory definition of heirs. Therefore, it is apparent that legislative intent was that children would be eligible for damages under the language of the wrongful death statute.

When the Uniform Probate Code was enacted in 1974, the intestate succession was changed so that, where there was a surviving spouse, the children did not take. If the wrongful death statute had been considered by the legislature and amended or reenacted following the change in definition of heirs resulting from enactment of the Uniform Probate Code in 1974, then an argument could be made that the legislature intended to change those eligible for benefits under the wrongful death statute. However, such has not been the case here. 687 P.2d at 672.

The Montana Court was faced with a much more difficult proposition than this Court in reconciling the provisions of Montana's version of the Uniform Probate Code with their wrongful death statute. First of all, it is to be noted and kept in mind that Montana is not a community property state, and Montana has never had a statute such as our former Rev. Code § 14–113, which, as discussed earlier, provided that the surviving spouse automatically succeeded to one-half of all community property, with the decedent's one-half subject to testamentary disposition with limitations as to whom the testator could favor.

All property in Montana, prior to its adoption of the Uniform Probate Code, was succeeded to under the identical general statute of intestate succession which we had in Idaho. Former 1947 R.C.Mont. § 92–403(1) is identical to former I.C. § 14–103(1). So, just as in Idaho, Montana children were in a class of those persons capable of inheriting from a deceased parent.

Montana's version of the Uniform Probate Code, however, is not identical to Idaho's version. Obviously, nothing therein is contained which, like I.C. § 15–2–102(b), deals with the intestate succession to the decedent's share of community property. Unlike I.C. § 15–2–102, 1947 R.C.Mont. § 72–2–202 omits, as a class of persons who are entitled to share in a deceased parent's estate, all children who are issue of the surviving spouse and the decedent. This, of course, was a drastic change in Montana laws governing intestate succession. At the same time, however, where a decedent left issue by a former marriage, the Montana Uniform Probate Code left intact, as a class of heirs entitled to take, children or grandchildren of the decedent by a former spouse—thus leaving the law

of intestate succession in Montana *almost* as it had existed for over a hundred years.[7]

It was against that backdrop that the Montana Supreme Court considered the stated purposes of the Uniform Probate Code (identical to Idaho's) and concluded that the legislature could not be charged with any intent to deprive any children (more often than not minors, and in that case the children were minors) of their cause of action under Mont.Code Ann. § 27–1–513.

The Montana court also may very well have had in mind the incongruous situation where to John Doe and Jane Doe, Montana residents, were born two children, Pat and Mike, aged 3 and 5, at which time the parents divorced. John then married Betty, and this couple, too, lived in Montana and begot one child, Lisa, who was six months old when John Doe was struck down and killed by a drunken driver. Pat and Mike were then aged 5 and 7. John, having not made a will, died intestate. It would be a strange and suspect application of the law which would result in Pat and Mike being able to pursue a wrongful death claim for the death of their father, but denying that same right to Lisa, simply because under the Montana version of the Uniform Probate Code she was not included in the class entitled to inherit in a probate proceeding. The Montana Court reached a commendable result in a well-reasoned opinion which, had it been available to us, would have been a guiding light at the time of *Schiess*.

The net result is that Betty Doe, as surviving spouse, receives in probate one-half of the estate; Pat and Mike receive and split one-half as *such* children, not being issue of Betty but of Jane. Lisa gets nothing out of the estate and, if *Schiess* had

become law in Montana, would not have qualified as a wrongful death plaintiff.

As for the philosophy of today's majority, it may truly be said that continued application of *Schiess*, other than for the timely intervention of the legislature, would have destroyed the right of all minor children in Idaho to recover damages for the loss of a parent unless that parent happened to be well-endowed with separate estate.

Now knowing the legislature's disenchantment with *Schiess* and now having the benefit of the Montana court's opinion, and having had its attention drawn to the California *Steed* case, the majority's insistence on perpetuating this second gross miscarriage of justice on minor children is intolerable. There is *no* excuse.

### III.

### *A Critique of the Majority Opinion*

The majority offers no explanation for its refusal to overrule *Schiess*, as requested by the Nebeker children, whose brief accurately asserts that the defendants have not shown that any other jurisdiction has cut off the right of a natural child to recover damages in an action for the wrongful death of a parent.

The best argument that I have heard, and it is so pitiful that I am nigh brought to weeping, is that the legislature has overruled *Schiess*, for which reason this Court should not overly concern itself with letting this case stand, i.e., why overrule an outrageous judicial decision which other than for the Nebeker children will not visit misfortune on any future child plaintiffs?

That philosophy undoubtedly stems from this passage where Bakes, J., is strangely not as precise as is ordinarily the case:

> (a) if there is surviving only one such child [does apply] or the issue of one such child, one-half of the intestate estate;
> (b) if there are surviving more than one such child or one such child and the issue of one or more deceased children, one-third of the intestate estate.

**7.** Montana Code Ann. § 72–2–202 reads:

**Share of spouse.** The intestate share of the surviving spouse is

(1) if there is no surviving issue or if there are surviving issue all of whom are issue of the surviving spouse also, the entire remaining estate; [does not apply]

(2) if there are surviving issue one or more of whom are not issue of the surviving spouse, as follows: [does not apply]

Appellant contends that children, until *Schiess*, had always been considered proper parties plaintiff to an action for the wrongful death of one of their parents. In "some" cases prior to *Schiess* children, as plaintiffs, did recover damages under the wrongful death statute for the death of a parent. *E.g. Hepp v. Ader*, 64 Idaho 240, 130 P.2d 859 (1942); *Lebak v. Nelson*, 62 Idaho 96, 107 P.2d 1054 (1940); and *Manion v. Waybright*, 59 Idaho 643, 86 P.2d 181 (1938). However, in none of those cases were children permitted to recover damages under our wrongful death statute when it was determined that they were not "heirs" under the intestate provision of the probate code at the time of the death of their parent. Not one single case since the adoption of our wrongful death statute has held that children who did not qualify as "heirs" under the intestate succession law were, nevertheless, considered to be "heirs" for purposes of the wrongful death statute. While not every wrongful death case has addressed the issue, every case that did has uniformly held that claimants, whether children, spouses, parents or other heirs, qualify or do not qualify as proper parties plaintiff *solely* on the strength of their qualifications as "heirs" under the intestate succession provisions in effect at the time of the wrongful death of the deceased. Majority Op., pp. 611–612, 747 P.2d pp. 20–21.

The passage will immediately remind the reader of the current beer ad featuring Yogi Berra. Why?—because it does not say anything, but sounds as though it does.

Justice Bakes' review of the case law is seriously flawed. He argues that Idaho courts have cultivated an ancient tradition in determining who are heirs for purposes of our wrongful death statute, I.C. § 5–311. He cites *Whitley* for the proposition that heirs are to be determined by reference to the statutes of descent and distribution *in effect at the time of the decedent's death.* He contends that this reference is accomplished by determining if a potential heir will take actual dollars—no

dollars, no plaintiff's standing in a wrongful death action.

This is an inaccurate, latter-day judicial gloss on the case law between *Whitley* (1913) and *Hogan v. Hermann* (1980). In *Whitley*, Justice Ailshie, at 23 Idaho 662, 132 P. at 127, says simply: "Our statute defines who shall inherit the property of a deceased person. Those persons are his 'heirs,' and our statute, sec. 4100 [now I.C. § 5–311], authorizes the 'heirs' of a deceased person or his personal representative to maintain an action such as the one at bar. *In our opinion, those heirs are statutory heirs rather than common-law 'heirs.'"* (Emphasis added.) The case does not say that if the intestacy statute is changed by future legislatures, then Idaho courts are bound to apply the new statutes in order to determine who may maintain a wrongful death action. The case does not say that one must refer to the statutes *in effect at the time of decedent's death.* This language is added by Justice Bakes.

The judicial gloss underlined above was added in *Hogan*, 101 Idaho at 895, 623 P.2d at 902. However, even in that case, where the Court applied the former I.C. § 14–103, there was no determination made of the existence of separate property, if any, which is necessary if parents are to share in the estate. Surviving the deceased in *Hogan* were her parents and husband.

The "ancient tradition" advanced by Justice Bakes really dates only from his own opinion in *Everett v. Trunnell*, 105 Idaho 787, 673 P.2d 387 (1983). There the Uniform Probate Code was used for the *first* time to close the courthouse door on parents who were plaintiffs in a wrongful death action. *See, Everett, supra,* 105 Idaho at 790, 673 P.2d at 390.

The precise application of the Code advanced here surfaced only with the unfortunate decision of *Schiess v. Bates*, 107 Idaho 794, 693 P.2d 440 (1984). For the first time, the Court required plaintiffs to allege and prove an estate of separate property. *None* of the earlier cases made this requirement *despite the fact* that the former statute, I.C. § 14–103, required a separate estate in order for children to

take. *Powell v. Powell,* 22 Idaho 531, 126 P. 1058 (1912). *Schiess* thus violates the spirit of *Whitley* and the intent of I.C. § 5–311.

Justice Bakes' opinion is likewise deficient in its interpretation of the legislative intent which guided the adoption of the Uniform Probate Code in 1971. He states that the legislature intended that the wrongful death statute would be applied "as it always had been, *vis.* 'heirs' would be determined by reference to the intestate succession provision *in effect at the time of death.*" Since, as explained above, this judicial gloss was added by the *Hogan* Court in 1980, Justice Bakes is improperly attributing clairvoyance to members of the 1971 legislature. With *Hogan, Everett,* and *Schiess,* our Court lost sight of the fact that all Justice Ailshie was doing in *Whitley* was gratuitously distinguishing statutory heirs from common law heirs. He was not decreeing, nor did he have any such authority to so decree, that future plaintiffs were bound by *any* legislative amendment of the intestacy statutes.

At page 611, 747 P.2d at page 20, the majority opinion correctly states that the Nebeker children contend that "until *Schiess,* children had always been considered proper parties plaintiff to an action for the wrongful death of one of their parents." That reads well enough. But then, get this next line, "In *some* cases prior to *Schiess,* children, as plaintiffs did recover damages under the wrongful death statute for the death of a parent." And the good Justice cites three cases, *Hepp v. Ader, Lebak v. Nelson,* and *Manion v. Waybright.* The Justice then goes on to add this truly remarkable assessment of those cases which convinces him that "... in none of those cases were children permitted to recover damages under our wrongful death statute when it was determined that they were not 'heirs' under the intestate provision of the probate code at the time of the death of their parent."

*Hepp v. Ader* is no stranger to me or to Justice Bakes.

The deceased parent there was a 56–year-old wife, who was a mother of two grown daughters, only one of whom joined her father in bringing suit. The plaintiff daughter was 33–years-old, married, and living with her own mother, and she did not testify. The Court, per Justices Ailshie, Morgan and Givens, set aside the daughter's judgment on a $1,500 verdict, based on grounds of lack of evidence supporting damages. What bearing that case has on the claim of the Nebeker children is beyond me. The case makes no mention of either grown daughter being not permitted to bring an action because they were not heirs, and clearly one daughter did do so.

In the *Lebak* [8] case a widower father was killed, leaving minor children aged 10, 9 and 8. They brought suit against the defendants through a court-appointed guardian, and recovered a judgment. That case too, makes no mention of any other child being disenfranchised of a right of action on the basis of not being an heir. In fact, the Court's opinion did not even deem it necessary to mention that this was a wrongful death action, did not mention the statute itself, and did not mention that the three little children were intestate heirs of their deceased father.

In *Manion v. Waybright,* 59 Idaho 643, 86 P.2d 181 (1938), the plaintiffs were the widow Eva Manion and the four minor children of the deceased William Manion. The Court again did not deem it necessary to spell out that this was a statutory wrongful death action, did not mention the statute, and did not mention that the five plaintiffs were under the Idaho intestate statutes of general succession of the heirs of the deceased husband and father. The action was simply mentioned as the damage action, which it was. Counsel involved in the case, three of whom were well known to me and to other practitioners in North Idaho, were Ezra Whitla and E.T.

---

**8.** Both *Hepp v. Ader* and *Lebak v. Nelson* should find favor with Justice Bakes. In *Everett v. Trunnell,* 105 Idaho 787, 673 P.2d 387, he wrote that the legislative interest was to limit recovery to those persons most likely to be affected by the untimely death of a decedent, and specifically mentioned a spouse and a [minor] child.

Knudson for the defendants, and N.D. Wernette and W.B. McFarland for the decedent's heirs. Mr. Wernette and Mr. Knudson would later both serve as Justices on this Court. In short, counsel were learned and able. If there were other children in that case who were not permitted, *i.e.* were dismissed on a determination that they were not heirs, such was never mentioned in the Court's opinion. Quite the contrary, counsel in that case were not pettifoggers, and all of them knew without looking at the statute that children, and especially minor children, had forever been prime plaintiffs in an action brought for negligence or willfulness in the killing of a parent. Most, if not all, of the Idaho cases reflect the simple indisputable fact that any person out of law school has known without resorting to the statutes, that children have been, at least up until the *Schiess* aberration, proper plaintiffs to bring suit for the death of a parent, and that minor children are the children who will be most likely to suffer a loss, to borrow again from the words from Bakes, J., in *Everett v. Trunnell.*

In the paragraph above excerpted from the majority opinion, after misstating the content of *Hepp v. Ader,* and the content of *Lebak v. Nelson,* and also the content of *Manion v. Waybright,* he favors us with the statement that:

> Not one single case since the adoption of our wrongful death case has held that children who do not qualify as "heirs" under the intestate succession laws were, nevertheless, considered to be "heirs" for purpose of the wrongful death statute.

Although, as I earlier intimated that this language smacks of a genuine Yogi Berraism, and not doubting that it is wholly inadvertently so, it can only be taken by the uninformed reader as a message from Bakes, J., that in his review of the cases there have been no cases where a child who did not qualify as an heir under the general intestate laws was permitted to be a plaintiff. Of course, the following are not uninformed readers: not counsel for the Nebeker children, not Justice Huntley, not this writer, and certainly not Justice Wernette as an attorney, or Justice Knudson as

an attorney, nor *any* attorney. Yet Bakes, J., insists that there have been only "some" children, prior to *Schiess* who were allowed to be plaintiffs, and did recover damages. And apparently, two other members of the Court subscribe to such deceptive meanderings. Contrary to what Bakes, J., implies, the truth is that there is not a reported case where any child was ever dismissed as a party plaintiff in an action brought to recover for the wrongful death of a parent. It would be my pleasure to donate $500.00 to any charity of Bakes, J.'s choosing, in his name, if he can supply just one case, prior to *Schiess,* where a child was so deprived of his constitutional rights to pursue a right of action statutorily conferred upon him.

In the majority opinion on page 612, 747 P.2d on page 21, literary license is taken to indulge again in the fancy that the *Everett* case was a probate proceeding, *i.e.* "the parents would not inherit any portion of the intestate estate of their child...."

This Court's concern in *Everett* did not involve the decedent's estate—nor do we know that there was any estate—nor did we know if it was separate property or the community property of the husband and wife before the husband's death. As to the community property, if any, such would be limited by the marriage contract, as per the language of the *Whitley* case, and is not within the purview of the general intestate laws—either prior to the adoption of the 1971 Uniform Probate Code, or afterward.

Part (a) of § 15–2–102 is the 1971 version of the general intestate statutes. Under subparagraph (2) thereof, a surviving parent simply is not an heir where the decedent left issue surviving him. How much more simply can a statutory provision be stated? Moreover, prior to the adoption of the Uniform Probate Code, under the general intestate provisions of I.C. § 14–103(1) formerly and at the time of *Whitley,* Revised Code § 5702(1), any time there was even one child living, the parents did not qualify as heirs. Only under subparagraph (2) did the parents qualify—which was when the decedent left no issue, then the

630

parents came in to share with the surviving spouse.

Our opinion in *Everett* made that clear. Counsel for the plaintiff parents made no pretense that the parents qualified as heirs —but rather experimented on creating a new theory of recovery. The Court was not persuaded to that new theory, attorney fees were assessed against the Everetts, and no law was made. It should have been a short opinion, needing only to say, as it does, that "Under this statutory scheme, where the decedent leaves both a surviving spouse and issue, parents of a decedent are not entitled to inherit any property," and "Not being 'heirs' they have no cause of action under I.C. § 5–311 for their son's wrongful death." *Everett*, 105 Idaho at 790, 673 P.2d at 390.

But, before announcing that inescapable conclusion, and apparently still smarting from the four-member majority's rejection of his single action theory espoused in his dissenting opinion in *Hogan*, beginning at p. 789 of 101 Idaho, and at p. 389 of 673 P.2d, Bakes, J., brought to the fore that non-issue:

> The primary issue in this case is whether these particular plaintiffs can maintain this wrongful death action, *particularly in light of the fact that these plaintiffs failed to join in the action brought by the decedent's spouse.* (Emphasis added.)

The underscored non-issue was not further again mentioned, and played no part in our judgment, which was unanimous other than the award of attorney fees for a frivolous appeal. It became necessary to point out in my separate concurring opinion, that Bakes, J.:

> [I]ncorrectly today refers to *Whitley v. Spokane Ry. Co.*, 23 Idaho 642, 132 P. 121 (1913), *aff'd* 237 U.S. 487, 35 S.Ct. 655, 59 L.Ed. 1060 (1915), as standing for the proposition that the plaintiffs in this case cannot "maintain this wrongful death action particularly in light of the fact that these plaintiffs failed to join in the action brought by decedent's spouse." Neither *Whitley* nor *Hogan v. Hermann* so held, and on the contrary,

in both of those cases there were two suits. Bakes, J., with no one joining, espoused the single action theory and may be seen in his today's opinion as again espousing his own previous view. Moreover, in so doing, seemingly there is an abdication of his sometimes stance that the Court should not decide cases on issues which were not presented to the trial court. Defendants' motion was not predicated upon a single action theory, nor was that contention advanced in a supporting brief. The trial court, Judge Norris, did not rule against the appellants on that basis—nor should we—but on the grounds that they were not "heirs" as legislatively defined. 105 Idaho at 791, 673 P.2d at 391.

What Justice Bakes wrote in *Everett* relative to his single action theory, while basically uncalled for and improper, did not in and of itself cause any difficulty in the ensuing *Schiess* case. It does, however, demonstrate his desires as to how long-existing case law may be distorted into conformance with his own views. To his credit, as mentioned above, he did *then* recognize that the legislature's objective in creating the cause of action for wrongful death "was to allow suit by those persons most likely to be affected by the untimely death of a decedent, such as a surviving wife and child." 105 Idaho 790, 673 P.2d at 390. That same opinion correctly noted that such a suit had indeed been pursued by Kenneth Everett's surviving spouse and child, and that the case was settled without going to trial. 105 Idaho 789, 673 P.2d at 389. *That the child was a minor, and that defense counsel, Daniel T. Eismann of Homedale, and William J. Brauner of Caldwell did not plead any defense such as that the child was not a proper plaintiff because he did not actually inherit any property from his deceased father are matters of public judicial record of which this Court can judicially take notice. Equally so, we can judicially notice that Kenneth Everett died possessed of no separate estate whatever, and that the total value of the community estate of Kenneth and his wife was $11,000.*

As mentioned earlier in this opinion, there has never been a case prior to *Schiess* where the parties or the courts have confused a probate proceeding (actually inheriting) with a wrongful death action (by an heir entitled to inherit).

Justice Huntley in his dissenting opinion has thoroughly explained how the Court went wrong in the *Schiess* case. Simply stated, it allowed itself to be persuaded that a person, be he a minor or a parent, is not an heir unless he actually comes into some property from, as there, a deceased father, and as in this case, a deceased mother. As stated that has never been the law, and the *Schiess* case should not be allowed to stand in the way of the Nebeker children.

Assuming that the two justices who join Justice Bakes in standing on the *Schiess* case do so only because it is of such recent origin, and to overrule it would be tantamount to having been not too careful in joining in the *Schiess* opinion, so be it, *stare decisis* should govern. But, are reasons why that case is not entitled to any benefit of that doctrine. The *Schiess* opinion never became final, a fact which was not known to me [9] until inadvertently discovered on pulling volume 108 of the Idaho Reports to review *Miller v. Farmers Insurance Co. of Idaho*, at page 896 [702 P.2d 1356]. On that same page there is this order in the *Schiess* case, which speaks for itself:

No. 15239.

Supreme Court of Idaho.

July 23, 1985

ORDER

Prior report: 107 Idaho 794, 693 P.2d 440.

The Court having entered an Order on June 18, 1985, 108 Idaho 715, 701 P.2d 663, recalling the REMITTITUR previously issued by this Court on January 2, 1985, and granting Appellants' PETITION FOR REHEARING and counsel for the parties having filed a STIPULATION AND ORDER OF DISMISSAL on

July 1, 1985; and the Court being fully advised; therefore, good cause appearing,

IT IS HEREBY ORDERED that counsel's STIPULATION for dismissal of PETITION FOR REHEARING be, and hereby is, APPROVED.

IT IS FURTHER ORDERED that Appellants' PETITION FOR REHEARING filed June 18, 1985, be, and hereby is, WITHDRAWN and the REMITTITUR shall reissue as of the date of this Order.

My curiosity whetted, it was in order to turn to page 715 of 108 Idaho [701 P.2d 663], where this order is found:

No. 15239.

Supreme Court of Idaho.

June 18, 1985

Prior report: 107 Idaho 794, 693 P.2d 440.

The Appellant having lodged a PETITION FOR REHEARING on April 5, 1985, and supporting BRIEF having been lodged April 10, 1985, of the Court's Opinion filed December 20, 1984; and a REMITTITUR having been issued by this Court on January 2, 1985, and the Court being fully advised; therefore, good cause appearing,

IT IS HEREBY ORDERED that the REMITTITUR issued by this Court on January 2, 1985, be, and hereby is, RE-CALLED.

IT IS FURTHER ORDERED that the PETITION FOR REHEARING and BRIEF which were previously lodged with this Court shall be filed as of the date of this Order.

IT IS FURTHER ORDERED that Appellant's PETITION FOR REHEARING be, and hereby is, GRANTED and Respondents shall file a Brief in response to Appellant's BRIEF filed in support of PETITION FOR REHEARING within twenty-eight (28) days from the date of this Order. Any Reply Brief by Appellant shall be filed within fourteen (14) days from the date of filing of Respondents' Brief.

---

9. As might have already been surmised, I did not participate in the *Schiess* case.

What these two orders tell me is that the Remittitur was recalled, this Court resumed jurisdiction, a petition for rehearing was GRANTED, a briefing schedule for respondent was set, and that for some reason the rehearing was no longer required. To satisfy an innate curiosity the original file in the clerk's office was examined, and the stipulation referred to was found to contain this language, *"the matter having been compromised and settled ..."* after the rehearing had been granted. The stipulation was submitted by Merrill and Merrill, Chartered, attorneys for defendants and by Isaac MacDougall for the plaintiffs. With it was submitted a proposed order, as follows:

ORDER

UPON THE FOREGOING STIPULATION and good cause appearing therefor:

IT IS HEREBY ORDERED that the above entitled matter be, and the same is hereby dismissed with prejudice to bringing of another action and with each party to bear their own costs.

DATED this __ day of June, 1985.

Why the action was not dismissed as the parties intended, there is no way of knowing. Not having sat in that case, I was not privy to what was taking place.

With the matter having been compromised and settled, after a petition for rehearing had been granted, it is my understanding, based on experience on this Court, that the issued opinion would have no precedential value, and should not have been published. A like circumstance was the case of *Lystrop, Hatch, Packer, and Dance, individually and on behalf of all architecture students as a class v. The Idaho State Board of Education,* S.Ct. No. 12012. This Court's 4–1 opinion issued March 4, 1977, reversing the Hon. Arthur P. Oliver, District Judge of the District Court, Sixth Judicial District State of Idaho, Bannock County, whose ruling was in favor of the students. The plaintiffs petitioned for a rehearing, which was granted. Prior to the rehearing, the parties compromised their differences, and the Court was

so advised. The opinions in that case were not published in view of the controversy being settled without any reconsideration by the Court. The teaching of that experience is that a settlement by the parties after this Court has granted a rehearing operates to destroy the precedential value of the Court's judgment and opinion, and the opinion will remain unpublished. If our system is to operate fairly and evenly, there cannot be one rule for *Lystrop,* and another rule for *Schiess.* Of course, without my bringing up the *Lystrop* circumstance, Bakes, J., along with Shepard, J., and Donaldson, J., were part of the majority of four in *Lystrop,* and conveniently forgetting it, prefer to believe themselves bound by *Schiess,* putting *Lystrop* out of sight, out of mind.

Better I say that *Schiess* be laid to rest. On top of everything else that can be said is wrong with *Schiess,* as pointed out in the defendant-appellant's brief, at the time the case was moved out of district court by the appeal to this Court, although there had been filed a "motion to dismiss all of the individual Schiess children as being improper party plaintiffs, not being 'heirs' under I.C. § 5–311.... This motion has not yet been ruled on by the district court." Defendant Bates' brief, pp. 2–3. The conclusion of that brief requested that "this Court should direct the district court to dismiss the surviving children of Mr. Schiess as parties plaintiff...." Blue brief, p. 26. Worse yet, this unresolved question was not included in the Notice of Appeal, which stated only:

1. The above named appellant, Peter Bates, appeals against the above named respondents to the Idaho Supreme Court from that final order and judgment denying appellant's motion for leave to file a third party complaint against the Estate of Laddie Ervin Schiess, Sr., entered in the above entitled action on the 3rd day of May, and reconfirmed pursuant to motion for reconsideration on the 10th day of August, 1983, the Honorable William H. Woodland, presiding.

The brief filed on behalf of the Schiess children clearly pointed to the *Everrett v.*

*Trunnell* circumstance that the surviving spouse and child had indeed sued, and the action was settled without going to trial. The brief was only remiss in not emphasizing that it is the "entitlement to inherit" which qualifies an heir as a wrongful death plaintiff, and "actually inheriting" had never been judicially said to be a requirement. The brief relied more on the wife's renunciation. The brief was remiss in failing to remind the Court of its often stated rule that it does not pass upon questions or issues which have not previously been submitted to the trial court.

When the rule is broken, and the issue is not ripe for appellate determination, a quality opinion would most likely be the exception, not the rule. On most of our appeals it is to be hoped that we first closely examine the views of the trial court. It is the trial judge, second in line only to the involved attorneys, who best knows what the controversy involves. Here, for whatever reason, this Court ignored that the appeal was from one specific trial court order, and obliged the defendant by passing on an issue not yet ruled on at trial, and did so without the benefit of adequate briefing, and obviously without any critical research on the issue involved. For certain, it was not simply a replay of *Everett.*

In sum, the only difference between the views entertained by Justice Bakes and myself are that he espouses the notion that *for all wrongful deaths occurring after 1911, for a child to be an heir the decedent must have died possessed of some separate estate in order for the child to qualify under the Whitley case.* I say that there is no case law to that effect, that Bakes, J., can point to none, and that Bakes, J., merely writes to make the reader think that there are some cases and he has found them.

When one considers the case of minor children, and further considers that the parents of minor children will be comparatively younger couples, it is a matter of general knowledge that 90 percent of those couples will have acquired no property which is not community property, and likely not much of that. It is such minor heirs

whose case is before us today and the law established in *Whitley* sensibly observed that heirs are those persons who are entitled to inherit, not that there must be a probate proceeding where they do in fact inherit some separate estate from a deceased parent.

The view espoused by Justice Bakes has never been the law and, if it is to be the law for just this particular case, it disenfranchises minor children of their right of action notwithstanding that the admitted objective of the wrongful death statute "was to allow suit by those persons most likely to be affected by the untimely death of a decedent, such as a surviving wife and [minor] child." *Everett, supra,* 105 Idaho at 790, 673 P.2d at 390 (Bakes, J.).

The indifference of those who join the opinion of Justice Bakes is both disheartening and frightening.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, dissenting.

The Court's opinion in *Rice v. Miniver,* 112 Idaho 1069, 739 P.2d 368, released in June of this year, 1987, in the first sentence acknowledges that it is a "wrongful death action" for the death of John Rice. The opinion itself does not state the names of the plaintiffs. The caption of the case informs only that the plaintiffs are Rosemary Rice, John Rice, Lori Rice, and Lisa Rice, and that the latter three Rices are minor children. Looking at the record, particularly the complaint, furnishes the information that the decedent whose death precipitated the law suit was John Wayne Rice, and the three children who lost their father were at the time of his death: Lisa, age 17 years; John, age 14 years; and, Lori, age 11 years. John Wayne Rice's four surviving heirs-at-law sought $750,000 for "having been deprived of the care, love, companionship and support of their husband and father."

The action was filed in September of 1982, and finally decided at the end of June in 1985, on a point of law, having to do only

with the ownership of the road on which the decedent was motorcycling.

The complaint in the action named as defendants additional to those mentioned in the caption of this Court's opinion the county of Bingham and the county of Bonneville, the road in question being partly in both counties. As the opinion shows, the plaintiffs were represented by a well-known and highly respected firm, Racine, Olson, Nye, Cooper & Budge. The opinion also shows that the defendant Miniver was represented by another well-known and highly respected firm, St. Clair, Hiller, Wood, McGrath, St. Clair & Baker; and the defendant Taylor Mountain Ski Area was represented by yet another well-known and highly respected firm, Holden, Kidwell, Hahn & Crapo. The opinion does not show that Bonneville County was represented by yet another well-known and highly respected firm, Peterson, Moss, Olsen, Meacham & Carr of Idaho Falls. Nor does it show that Bingham County was represented by the same firm which represented the defendant Miniver, the attorney of record being Mr. M.B. Hiller, with Mr. Marvin M. Smith of that firm taking part in trial court proceedings.

Bonneville County answered the complaint, and later moved for summary judgment. Miniver also moved for summary judgment. Later Bonneville County and the plaintiffs stipulated to a judgment of dismissal for Bonneville.

Of extreme significance is it that not one of these fine firms either by answer or by motion for summary judgment ever raised the defense that the three minor Rice Children were not proper persons to bring an action to recover just compensation for the loss of their father. Not a single defendant did so. The answer is not that the attorneys did not know the law, but that they did know it! Similarly the firm representing the minor children knew that they as well as their mother possessed a valid claim for the allegedly wrongful death of their father, and that by far the largest portion of the $750,000 damage claim

would be that awarded the children, were the case to go to a jury which found liability.

But, sayeth the majority for this case of the Nebeker children, the law is, and has been since the 1971 Enactment of the Uniform Code, and until the amendment of I.C. § 5–311 in 1984, otherwise unless the deceased parent had a substantial estate.

Justice Bakes would agree, I am certain, that the lawyers in the firms mentioned are of great experience and ability in the law—probably as much or more so as many of us who sit on the other side of the bench. Such being so, he would, if he cared to reply, speculate, surmise, and presume that John Wayne Rice was a man of considerable wealth, and that his three children actually inherited some of his estate,[1] and that it was separate estate over the amount of $50,000. But, if Justice Bakes' surmise is in error, and Mr. Rice had no separate estate, and if his wife received all of his interest in the community property, then Justice Bakes would have to find all of those excellent attorneys who defended the Rice wrongful death action grossly negligent in not raising the defense that the children were without any right to sue for the death of their father.

As it is readily found out by taking judicial notice of the court records in Bingham County in the intervening almost two years from the time of John Wayne Rice's death until the lawsuit was filed, his estate was probated, and the children received nothing. Under the views espoused by Justice Bakes, the firms representing the defendants in *Rice v. Miniver*, et al., can be delighted that they prevailed on the road—recreational trespass issues because, otherwise, they would all have faced the prospect of defending legal malpractice actions for not asserting the sure-winner issue that the children were not even entitled to sue. Similarly, where Justice Bakes speaks the law for the Court, Mr. Brauner and Mr. Eismann were prime targets for malpractice actions in settling the widow Everett and minor child's lawsuit.

---

1. To so speculate that the minor children actually inherited, one would have to surmise also that he had no will which devised everything to his wife.

Touching upon personal experience twenty-five or so years ago, Dar Cogswell and I represented the three minor children of a young mother who was killed at a railroad crossing where the S & I Railroad passes over Highway 200, just north of the Sandpoint city limits. This unfortunate mother worked for the support of herself and three children. She had no property, community or separate. It so happened that I also handled the probate of her estate, which was zero. On petition of the local mortician a probate proceeding was opened, the mortician was appointed administrator, he received and receipted for a check from Social Security which paid the standard amount for her burial expenses. The sole creditor's claim of the mortician was extinguished by endorsement of the check to the mortician, and the estate was closed.

The lawsuit proceeded along with the railroad's defense of no negligence being not bought by the jury, and the three minor children, all of whom were entitled to inherit from their mother—had she had any estate to be inherited—received a reasonable damage award for the loss of their mother. The action was brought solely by the children through a guardian ad litem. *Harris v. S.I.R.R.* Only in the most recent of years I learn that our clients had no right to bring the lawsuit, and that by sheer luck two reputable firms defending the railroad, one in Spokane, and one in Sandpoint, did not realize that, had they correctly read *Whitley* (against the same railroad, and possibly the same Spokane firm), the trial court on motion would have dismissed the action.

Another case for wrongful death in Bonner County is a reported case, *Bell v. O'Connor*, 94 Idaho 406, 489 P.2d 439 (1971). Virginia Bell's mother was killed when a car she was driving was struck in Priest River city limits by an O'Connor truck and automobile transport trailer. She was the only minor child, and sued not only for her mother's death, but for injuries to herself as well. The case was defended by an attorney reputed to be at the top of the list of capable trial attorneys in Idaho. The jury came in for his client. An appeal was taken where one of the main assignments of error was the admission into evidence of a local peace officer's accident report which stated thereon that Ruth Bell, Virginia's mother, ran the stop sign. The peace officer's only source of information was the defendant's driver. The Supreme Court on the appeal ignored an issue based on mathematical calculations that the truck driver could not have been going 25 m.p.h., as he testified, and also upheld the admission of the accident report—completely ignoring the statute which made it inadmissible.[2]

Hence, the defendant lucked out. Other than for that unfortunate admission of the accident report, Virginia Bell in all likelihood should have received a damage award. Defense counsel lucked out, too. Had Virginia prevailed, under the views of Bakes, J., counsel was remiss in not having her action summarily dismissed because, although entitled to inherit, she did not inherit. There was no estate to inherit, and hence no probate.

Notwithstanding all of the history of minor children's wrongful death actions—much of it reported, Bakes, J., continues to sway two other members of this Court with dazzling footwork:

Appellant contends that children, until *Schiess*, had always been considered proper parties plaintiff to an action for the wrongful death of one of their parents. In some cases prior to *Schiess* children, as plaintiffs, did recover damages under the wrongful death statute for the death of a parent. *E.g., Hepp v. Ader*, 64 Idaho 240, 130 P.2d 859 (1942); *Lebak v. Nelson*, 62 Idaho 96, 107 P.2d 1054 (1940); and *Manion v. Waybright*, 59 Idaho 643, 86 P.2d 181 (1938). However, in none of those cases were children permitted to recover damages under our wrongful death statute when it was determined that they were not "heirs" under the intestate provision of the pro-

---

**2.** The holding which upheld the admission stood as the law until *Owen v. Burcham*, 100 Idaho 441, 599 P.2d 1012 (1979): "Hence, to the extent that *Bell* authorized the actual admission of an accident report as substantive evidence, it is overruled." At 445, 599 P.2d 1012.

bate code at the time of the death of their parent. Not one single case since the adoption of our wrongful death statute has held that children who did not qualify as "heirs" under the intestate succession law were, nevertheless, considered to be "heirs" for purposes of the wrongful death statute. While not every wrongful death case has addressed the issue, every case that did has uniformly held that claimants, whether children, spouses, parents or other heirs, qualify or do not qualify as proper parties plaintiff *solely* on the strength of their qualification as "heirs" under the intestate succession provisions in effect at the time of the wrongful death of the deceased. Majority Op. of June 1987, pp. 611–612, 747 P.2d pp. 20–21.

When Justice Bakes writes that "In *some* cases prior to *Schiess* children ... did recover damages ... for the death of a parent, we all know what he is inferring, namely that there are cases where they did not, i.e., did not even have the right to bring the action. That simply is not true. There are *no* such cases which precluded a child from suing for the death of a parent. My previous offer of $500 if Justice Bakes can produce such a reported case is now upped to $1000—and open to all takers. Hopefully it will be a law student who earns the reward. But I caution against a great expenditure of time in a futile endeavor.

Justice Bakes goes on, after citing three cases, to say that in none of the cases were children permitted to sue when it was determined that they were not heirs under the general intestate laws. Remarkable! There was no such issue in those cases. What has the Justice said in that sentence? Nothing. A pure bit of sophistry, as is true with the rest of the paragraph. It says absolutely nothing, but is the backbone of the opinion by which he would have the reader believe that there have been cases where a child was denied entry to the courts because he could not qualify as an heir, where he did not actually inherit anything, which was the unfortunate holding in the *Schiess* case. The true maxim is, however, that a child cannot avoid being an heir of a parent under the general intestacy laws, both now and forever since *Whitley*, and later when the Uniform Probate Code adopted the same definition.

The final sentence of the paragraph from Justice Bakes quoted above is interesting. The first case to discuss the issue was *Whitley*, and of it Justice Bakes is correct in observing that it addressed the issue. Most assuredly it did do so. It held that, although "Mother" Whitley was not an heir at law under Tennessee law, she was an heir under the Idaho statutes governing general intestacy, and hence qualified to sue for the death of her son, as was the wife. Of the many issues in that case (see over six pages of the contentions of the parties and authority relied upon at pages 644, 645, 646, 647, 648, 649, and 650 of 23 Idaho, 132 P. 121, and then read the Court's discussion and disposition of them), no one contended that the "Mother" Whitley was not an heir of her deceased son. In fact:

> It is conceded that under the laws of the state of Idaho, the respondent, Mary Elizabeth Whitley, is an heir of A.P. Whitley, deceased, and that where the deceased, as in this case, left no issue, the surviving wife and surviving mother, the father being dead, are his only heirs and that they would inherit from him in equal shares. (Subd. 2, sec. 5072, Rev. Codes.) 23 Idaho at 666, 132 P. at 145.

So much for the *Whitley* case. The concession simply recognized the plain language of § 5702(2) Revised Code.

The next case did not arise until *Hogan v. Hermann*, 67 years later. The plaintiffs in that action were the parents of the deceased Carol Jean McGrath in April of 1972, who was survived by her husband, and by the parents. She left no issue. 101 Idaho 894, 623 P.2d 900. The husband's lawsuit for her wrongful death did not raise any challenge as to his being an heir entitled to bring suit, and it was settled.

The date of the accident and Carol Jean McGrath's death preceded in time the effective date of the Uniform Probate Code by two and one-half months. Otherwise

put, the old code was still in effect, and applicable was I.C. § 14–103(2)—the same provision in effect in the 1913 *Whitley* case, then being § 5702(2) of the Revised Code. There was no contention raised that the parents were not heirs under the statute, and not entitled to bring suit. Other issues were involved which greatly disturbed Justice Bakes, but are not relevant in the application of the statute which declares who are the heirs of an intestate decedent.

An intervening case between *Whitley* and *Hogan v. Hermann* was *Russell v. Cox*, 65 Idaho 534, 148 P.2d 221 (1944). The deceased woman there was survived by no issue, and only by her mother and her husband, who were conceded to be under the statute the decedent's heirs. There was no challenge to the mother's entitlement to sue for her daughter's wrongful death. The defendant, Cox, although an heir who would have had a right to sue, was not well-positioned to do so, because it was he who killed his wife, the daughter of the plaintiff.

So as with *Whitley*, and as with *Hogan v. Hermann*, here again was no issue drawn. The same statute was simply understood to mean what it said. Here, too, as in *Whitley*, and true also in *Hogan v. Hermann*, there was no mention of what the state of the decedent might have consisted of it there had been probate proceeding, and who got what. Nor should there have been.

Just prior to *Schiess*, there was one other case, *Everett v. Trunnell*. Here there was a child who survived, in addition to the decedent's wife. The lawsuit brought by the wife and child was settled. Another suit was filed by the decedent's parents. The district court dismissed it because they did not qualify as heirs under the provisions of the 1971 Probate Code which defines "heirs" and declared who would be such under the intestacy laws. Moreover had the prior code been in effect the parents would not have qualified as heirs. I.C. § 14–103(1). The lawsuit sought to create a common-law recovery in parents for the death of a son. With a statutory

scheme in place, the effort failed. As noted in the earlier opinion, speaking for a unanimous Court, Bakes, J. wrote that heirs are defined "as referring to persons who are entitled to inherit the property of an intestate (sic decedent), according to the laws of intestate succession in effect as of the date of the death." 105 Idaho at 789, 673 P.2d at 389.

Such are the cases where the issue arose and was contested. One case is *Everett v. Trunnell*. Where Justice Bakes cited *Hogan v. Herman*, for the above quoted statement, more properly he would have cited to the then applicable definition of heirs set forth in the Probate Code. Any issue of a man and/or a woman is issue, and is entitled to inherit.

As far as a probate proceeding is concerned, there may be some estate to inherit. If a person owns separate estate, and has no will, under the intestacy laws his children are his heirs, and will *inherit* from him. If the person wants a given child to take nothing, he must leave a will naming his beneficiaries and specifically naming any child who will take nothing, leave him nothing, and thereby disinherit him. Only in that manner can an heir be disinherited. What will he be? Easy, a disinherited heir, but nevertheless under the law his status is that of an heir. But that is a probate concern, and of *no* consequence in determining heirship for purposes of the wrongful death statute. Justice Bakes and I agree up to a point: we agree that *Whitley* held that heirs are persons entitled to inherit under the general intestacy laws. Where we cease to agree is where he says, relying on only the *Schiess* case, that a child is not an heir until the deceased parent left separate estate which he will come into. No case ever said that. Justice Huntley, who authored it, immediately disavowed it in his May 1987 opinion when he realized that he had been misled by what was written in *Everett*.

The wonder of it all is why Justice Bakes and his two other votes are so adamantly insistent upon depriving the Nebeker children of their right to seek damages. True, it happened in *Schiess*. But, as Justice

Huntley recognizes, two wrongs do not make a right. One wrong was bad enough, but a second is unpardonable.

HUNTLEY, J., concurs.